## BANK OF RISON *v.* LAYNE & BOWLER COMPANY.

## Opinion delivered March 21, 1927.

1. BANKS AND BANKING—LETTER ACKNOWLEDGING ESCROW.—A letter written by the cashier of a bank stating that the bank acknowledged receipt of money, which sum was placed in escrow with the bank, to be paid out only to the party to whom the letter was addressed, *held* binding on the bank.

2. ESCROWS—DIVERSION OF FUNDS—LIABILITY.—Where a deposit in escrow with a bank was made upon condition that the money was to be paid only to plaintiff, who was to drill a well for the depositor, and the bank paid out the money on order of the depositor to a third person who used plaintiff's rig and machinery and injured same in an amount exceeding the amount in escrow, *held* that the bank was liable to plaintiff for the amount of deposit with interest.

3. BANKS AND BANKING—ESCROW—ULTRA VIRES.—An escrow agreement with a bank, providing that the deposit in escrow should be paid out only to plaintiff company engaged in drilling a well for a depositor *held* not *ultra vires*.

4. BANKS AND BANKING—AUTHORITY OF CASHIER.—The cashier of a bank *held* authorized to accept a deposit in escrow to be used solely for drilling purposes.

Appeal from Cleveland Chancery Court; *H. R. Lucas,* Chancellor; affirmed.

*Palmer Danaher, M. Danaher* and *Woodson Mosley,* for appellant.

*W. A. Leach,* for appellee.

McHANEY, J. Appellee, Layne & Bowler Company, had, in 1920, drilled a test well in Cleveland County, Arkansas, for the Success Drilling, Lease & Oil Company, to a depth of 800 feet. The drilling company became indebted to appellee in the sum of $2,042, which it was unable to pay, and all work under the contract ceased about the 9th day of October, 1920. Later the parties resumed negotiations for the completion of the test-hole already commenced, and the appellee, on account of the previous indebtedness, required the drilling company to make a deposit of $1,000 in the appellant bank to pay for further work before it would enter into another contract for the completion of the well. On the 19th day of

May, 1921, appellant wrote appellee as follows: "We understand from Mr. J. D. Newton that you are to resume operations on Elliott well No. 1 when the bank will guarantee you $1,000. This amount is in our hands now, with the understanding that it is to be used solely for drilling purposes." The J. D. Newton mentioned was the secretary and general manager of the drilling company.

On the 24th day of May, 1924, the appellant bank wrote the appellee as follows:

"Rison, Arkansas, May 24, 1921.

"The Bank of Rison, Rison, Arkansas, hereby acknowledges receipt from Success Drilling, Lease & Oil Company, one thousand dollars, which sum is placed in escrow with the said Bank of Rison, to be paid out only to Layne & Bowler Company, on orders of J. D. Newton, representative of Success Drilling & Lease & Oil Company.

(Signed) "Bank of Rison,
"By Walter Elrod, Cashier."

It appears that Walter Elrod, cashier of the appellant bank, was also very closely identified with the drilling company, holding in his name, as trustee, all the leases owned by it.

On the 25th day of May, 1921, an agreement in writing was prepared between appellee and the drilling company and signed by the drilling company, subject to the approval of the Memphis office of the appellee, by the terms of which drilling of the test-hole was to be resumed by appellee, for which he was to be paid at the rate of $6 per foot, not only for that part of the well which had caved in or clogged up, but for drilling through new soil. It was further agreed that $1,000 had been deposited with the appellant bank to guarantee the performance of all obligations on the part of the drilling company under the contract, and that no part of the said $1,000 was subject to withdrawal by the drilling company, but was to be paid to appellee from time to time as the work progressed, as therein provided. The contract was

approved by the Memphis office on the 26th day of May. There was some little delay by appellee in getting its men on the job and resuming drilling operations, and on May 31 the drilling company wrote appellee that it was disappointed that the men had not come, and requested that they do so at once.  The next day, June 1, the drilling company again wrote appellee that the seriousness of the delay of getting the men there had passed, and that, if they had good places or jobs elsewhere, not to disturb them, as this one might not last long; that the delay would not inconvenience him, and to let him know beforehand when he would send the men.  On June 19 the drilling company again wrote appellee that, upon his return to Rison the evening before, Mr. J. W. Elrod told him that he had a "phone message" from appellee, stating that it could send a crew of men there Monday to commence drilling.  He said: "I am sorry to tell you that I have been unable to secure the finances with which to drill my well, and, knowing this to be so, I went ahead and cleaned out the well, and am going to get the casing to case it so that the hole will be preserved.  I go Monday to Shreveport to get this casing."

Again in this letter he said: "It would be folly for me to have your men come, knowing my financial status, while I have quite a lot of leases sold, but the abstract and signatures are in escrow in the bank, and have been for some time, awaiting redemption."  Again he said: "I hope this will be satisfactory to you, and, if it is not, you can give me the seven days' notice, as set out in the contract, which will terminate it, and I will deliver your machinery F. O. B. cars Rison, Arkansas, unless we can come to some agreement more favorable.  I am perfectly willing to pay you rental for the time I have used the machinery, as I may go some deeper to see if I cannot find production at the shallow depth, as was indicated in the Branner well near by."

In response to this letter of the 19th, appellee sent Mr. E. Brown Sanderson to Rison to find out what they were doing with the well and appellee's machinery, and he

found that they had another driller out there, and were using their rig and machinery, and had been for a month or so; that it was damaged and needed repairs, and that they had used about fourteen hundred feet of appellee's four-inch iron pipe, and had twisted it off in the hole about thirty feet from the top, and that this pipe was worth ninety-one cents a foot.

On June 22 the drilling company again wrote appellee in part as follows: "As to the money in escrow, there will be no difficulty in adjusting this. I would like to keep the machinery as long as possible, and can see no reason why I cannot pay you a reasonable rent for it, that you could not permit me to do so."

Several other letters were introduced in evidence between the parties to the same general effect. The evidence showed that the rental value of the machinery was not less than $25 per day, and that the drilling company had used the machinery for a period of about fifty days, and finally the drilling company twisted off the drill stem, leaving about 1,400 feet of it in the hole.

At the conclusion of the testimony, the court rendered a decree against appellant for $1,240, being $1,000 principal and $240 interest from the time the suit was filed, from which comes this appeal.

Appellant says the two writings of the bank are insufficient to bind it. But we differ with appellant as to this. By the writing of May 24 the bank received the $1,000 and held same in escrow, and agreed that same was "to be paid out only to Layne & Bowler Company, on orders of J. D. Newton."

It therefore had no authority to pay it to any one else, and, by so doing, it became liable to appellee for the amount thereof, with interest from the date of suit. Elrod was the cashier of the bank and trustee for the drilling company. He also knew of the contract between the drilling company and appellee. The writing of May 24, as well as of May 19, was executed by Elrod for the bank for the purpose of inducing appellee to enter into the contract with the drilling company, and to get the

well drilled deeper.    Thereafter, instead of permitting appellee to do the drilling under the contract, the drilling company took possession of the rig and machinery, hired another driller, operated the outfit for fifty days, without the knowledge or consent of appellee, broke about 1,400 feet of the drill stem off in the well, of the value of 91 cents per foot.    While all this was going on, the cashier of the bank permitted the escrow money in his possession to be checked out, for these or other purposes, which he had agreed in writing should "be paid out only to Layne & Bowler Company."    If he had kept this money as he agreed, it would have been available to pay the rental value, or damages for the value of the drill stem destroyed, and other damages claimed, either of which was in excess of the judgment against it.

There is no merit to the contention that the bank is not bound because the escrow agreement is *ultra vires,* and that the cashier had no authority to accept this deposit for this special purpose.

The decree of the chancery court is right, and it is therefore affirmed.