BANK OF SHIRLEY *v.* SMITH.

Opinion delivered March 3, 1930.

*Brundidge & Neelly* and *Opie Rogers,* for appellant.

*Garner Fraser* and *Williamson & Williamson,* for appellee.

BUTLER, J. We adopt the statement of facts set out by the appellant in its brief as a fair presentation of the same. On the 22d day of February, 1924, the appellee, J. T. Smith, who had worked for the appellant bank a short time prior to that date, made an agreement with Albert Couch, cashier of the Bank of Shirley, that he would pay the Bank of Shirley $1,000, and that Couch would select $1,000 worth of notes for Smith and collect them for him; that on that day, at the time the arrangement was entered into, Couch delivered to the appellee a memorandum in writing as follows: "I have this day selected notes aggregating $1,000 for you, said notes bearing interest at the rate of 10 per cent. which notes are to be collected by this bank for you. Yours very truly, Albert Couch, Cashier."

On or about the same date for the years 1925 and 1926 following, Smith would collect from the bank $100 as interest and Couch would redate the memorandum, making it the same day of the month and changing the year. Some time in June, 1926, Couch left the employment of the Bank of Shirley, and when Smith presented himself to the new cashier to collect the interest on the $1,000 he was told that there was no record of any such transaction in the bank, and payment of the annual interest due was refused. The president and some of the other officials of the bank were also interviewed by Smith regarding the transaction, all of whom denied any knowledge of it, and refused to recognize it. Afterward Smith went to Morrilton, to which place Couch had removed, and there Couch paid him $15.

There is no dispute about the transaction except as to what took place at that time and at the time the interest payment in February, 1926, was made. Smith testified that there was no change at all in the arrangement, while Couch testified as follows: "Later he

(Smith) was there at the bank and said he would like to continue the arrangement, and I told him it was an unusual transaction, and that I didn't know whether we could handle it on that basis or not, and he said, if we couldn't, that he would be glad if I could handle the money myself for him. I agreed that I could use the money. He came to Morrilton to see me, said that he would like to have the interest, but that I might continue to use the money, but would like for me to make a note. I paid him $15 interest. He said that that was all right." Couch further testified, "The personal deal was made with him some three or four months before I went out of the bank."

Smith testified that in accordance with the agreement first made he drew a check on the First State Bank of Marshall for $1,000, payable to the Bank of Shirley, the proceeds of which were collected by the latter bank. The notes were never delivered to witness but were kept in the bank. When he made the arrangement with Couch he looked over the notes that were to be given him. These were notes made payable to the Bank of Shirley, but he never saw them any more, and he did not know where they were. He had never received them or collected them, and didn't know whether they were good or bad.

The cashier Couch testified that he was not positive whether the $1,000 worth of notes were ever delivered to Smith or not, or whether they were left at the bank for safe-keeping. Later on in his testimony, the witness stated, "I did not collect the notes—just interest—or some of the notes might have been collected—I don't remember. I suppose I made a record of it—do not remember. I do not know whether the notes selected in 1923 were collected, or just the interest. The notes were originally selected at the time he put the money in the bank and as they would be collected or renewed other notes were substituted in their place. The notes in 1924 were collected or renewed, as were the ones in 1925." Couch further stated, "I never made a loan of this kind

before, and the bank never made one that I knew of.''
Witness stated that he was at that time under indict-
ment, but did not know whether the Bank of Shirley or
the prosecuting attorney had had him indicted; that
before the transaction out of which this suit arose Smith
had worked for a short time in the Bank of Shirley, and
was well acquainted with witness, and witness never
knew or heard of the bank making a deal similar to the
one made with Smith.

Stevens, the president of the Bank of Shirley, and
Williams, its cashier who succeeded Couch, testified to the
effect that the records of the bank did not disclose the
transaction between Smith and Couch, and that they had
no knowledge of such transaction until the early part of
1927 when Smith asked for the payment of the interest;
that there was no resolution passed by the board of
directors of the bank authorizing the sale of the notes
to Smith.

The jury returned a verdict for the plaintiff, and the
appellant bank contends that the case should be reversed
because the testimony is insufficient and that the court
should have given a peremptory instruction for the ap-
pellant. Appellant also contends that the court erred
in refusing to give instructions Nos. 6, 3 and 5, as
follows:

''No. 6. I instruct you that you are the judges of
whether or not the instrument sued on was a pledge of
the notes of the bank or a sale, and if you find said
transaction was a pledge same would be void; and your
verdict will be for the defendant.

''No. 3. The jury are instructed that if you find
from a preponderance of the testimony that Albert
Couch, cashier of the Bank of Shirley, was authorized
to sell to the plaintiff $1,000 worth of notes, and that he
did sell said notes to the plaintiff on February 22, 1923,
plaintiff would only be entitled to recover the value of
the notes sued for at this time, unless the plaintiff has

proven by a preponderance of the testimony the value of the notes, then your verdict will be for the defendant.

"No. 5. The jury are instructed that if you find from the testimony in this case the transactions between Couch and the plaintiff, Smith, relates to the sale or pledge of the notes, was out of the ordinary and not customary with the bank, and that the bank had no notice of said transaction and did not ratify the same, then your verdict will be for the defendant."

Appellant cites the rule laid down in 7 C. J., p. 527, and in 3 R. C. L., at page 78, in support of the position taken. The jury, by their verdict, found the issues of fact for the appellee, which we must now treat as true and give to them their strongest probative force. From the facts set forth, we conclude that the bank received $1,000 for a number of its notes aggregating in face value that amount, which face value is *prima facie* measure of their real value, and, in the absence of testimony to the contrary, we must indulge the presumption that they were in fact worth the amount which the makers of said notes agreed to pay to the bank, *i. e.*, $1,000. *Second National Bank* v. *Bank of Alma,* 99 Ark. 386, 138 S. W. 472. It might also be said that it has not been shown by the appellant bank that the notes had not been collected and; certainly, it would be the duty of the bank, having retained the notes for collection, to show that they were not collected or that they were uncollectable.

In *Arrington* v. *King,* 179 Ark. 587, 17 S. W. (2d) 302, we said: "There is nothing in the appellant's contention that the sale and indorsement of the note to the appellee was void, being made by the cashier without written authority from the board of directors authorizing it. Under the law as amended the cashier could sell and indorse this note owned by the bank, in due course, without any authority first given by the board of directors of the bank and reflected in a written record made thereof. Section 700, C. & M. Digest, § 34 of act 113 of 1913, was amended by § 18, act 647 of 1923. * * *" It will be seen

therefore that Couch, in selling the notes to Smith, was acting within the scope of his authority. Moreover, having received the benefit of this transaction by accepting and appropriating the $1,000 paid to the bank by the appellee, and having retained the custody of the notes with the agreement to collect the same, and having failed to account for the same, the appellant bank is in no position to deny the authority of its cashier. *Wilson* v. *Davis,* 138 Ark. 111, 211 S. W. 152; *Bank of Booneville* v. *Clements,* 172 Ark. 1023, 291 S. W. 439. See also, *State National Bank* v. *First National Bank,* 124 Ark. 531, 187 S. W. 673; *Morgan* v. *State,* 162 Ark. 257, 257 S. W. 364; *Bank of Rison* v. *Layne & Bowler Co.,* 173 Ark. 368, 292 S. W. 126; *James* v. *Board, etc.,* 173 Ark. 517, 292 S. W. 983. We are therefore of the opinion that the trial court did not err in refusing to give the instructions requested as above set out, and that the testimony was sufficient to warrant the submission of the case to the jury.

It is insisted that the appellee should have made demand for the delivery of the notes, and should be required to show the value of the notes purchased from the bank in 1926, what the notes were, and that the bank still had the notes, and that they were valuable, before he could recover. A part of this contention has been already answered by the authorities hereinbefore cited, and it may be further said that when demand was last made by the appellee for the interest, he was informed that the bank knew nothing of the transaction, that its records disclosed no such transaction, and liability was denied. Any further demand would have been futile. It may be true, as claimed by the appellant, that the bank was in reality not benefited by this transaction, but, if such was the case, it was not the fault of the appellee who paid the money into the bank but the fault of its agent, for which the appellee is in nowise responsible.

The judgment of the trial court must therefore be affirmed. It is so ordered.