Oliver vs. Morawetz.

---

OLIVER, Respondent, vs. MORAWETZ, Appellant.

*October 4 — October 22, 1897.*

*Contract by professed agent: Liability of and remedy against agent: Submission for special verdict: Appeal: Harmless error.*

1. A person who, representing to another that he is authorized to sell certain property on specified terms, agrees to pay to the latter a commission in case he will find a purchaser therefor on those terms, makes himself personally liable for such commission when earned, if he had no authority to sell the property.

2. The unauthorized agent who makes such contract in the name of the principal is liable as on an implied warranty of authority, and an action for a breach thereof is a proper remedy.

3. A judgment which is clearly right will not be reversed on appeal, though the charge of the court may not be strictly correct, since the error cannot have prejudiced the defeated party.

4. A court may, of its own motion, submit a case for a general verdict and for answers to certain specific questions in connection therewith, after the defendant has closed his argument.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This was an action brought to recover $1,000, which it is alleged the defendant agreed to pay the plaintiff as commission for his services in procuring a proper person to purchase certain property described in the complaint. The plaintiff did procure one Edwin H. Abbot as a purchaser of the property according to the terms and conditions agreed to by and between the defendant and the plaintiff, to the effect that the property should be sold for $50,000, of which $5,000 was to be cash, and the balance secured by mortgage payable within five years, with interest at five per cent. per annum. The evidence showed that the plaintiff performed fully all the conditions precedent on his part, and the defendant failed to pay the plaintiff his agreed commission. The answer was a general denial.

Evidence was given tending to show the following facts: The plaintiff called on the defendant in November, 1891, and asked if the property in question was for sale, and what its price was; said that he had a man out of the city who wanted to make an investment. *Morawetz* said he would sell it for $60,000. The plaintiff asked upon what terms, and the defendant said, "easy terms;" and, upon being asked what he meant by "easy terms," said: "Well, we will sell it for $7,500 down, $7,500 in a year, and different payments spreading it along;" that, if plaintiff would sell it for $60,000 he would pay him a commission of two per cent., and, if he

Oliver vs. Morawetz.

sold it for less than that, he would pay one and one-half per
cent.   He did not succeed in making a sale until October of
the following year.   In August, 1892, he heard that the
property was for sale at $50,000, when he went to the de-
fendant, *Morawetz*, and said: "*Mr. Morawetz*, who owns this
property?"   He said: "It belongs to the estate of Joseph
Bremer, Jacob Morawetz, and myself."   Plaintiff said: "Are
you the authorized agent?"   "Yes," he said, "I am; I have
got the property for the heirs; I built the building;" that
he had collected the rents, and divided them among those
interested.   Plaintiff saw defendant when he heard about
the property being for sale at $50,000, and *Morawetz* said
he would sell it for $50,000, and would give plaintiff a com-
mission of two per cent.,— $1,000.   The plaintiff took Mr.
Abbot to see the building, October 18, 1892, when he asked:
"What can this property be bought for?"   Plaintiff answered
that it could be bought for $50,000, on "easy terms," which
were defined to be, probably, $5,000 down, and $45,000 in
deferred payments.   Mr. Abbot said, if that property could
be bought for $50,000, $5,000 down and $45,000 payable on
or before, with interest at five per cent., he thought he would
take the property; but he declined to make a bid.   The
plaintiff then saw the defendant, and told him that he had
a gentleman from outside the city who he thought would
pay $50,000 for that property, provided the terms were
made easy; that he thought Abbot would pay him $5,000
down in cash, and $45,000 in deferred payments, payable on
or before, with interest at five per cent., as he was a man of
very large means.   The defendant said: "I will authorize
you to sell it to him at that."   The evidence tended to show
that the plaintiff went to Abbot's office, where a receipt
was signed, running to *Joseph B. Oliver*, agent, for $250, in
part payment for the property in question, stating the terms
of sale; that the premises had been sold to *Oliver*, agent, for
$5,000 and $45,000 mortgage; that said cash was to be paid

and mortgage dated as soon as a clear title, free from incumbrances, was shown by abstract brought down to date; that the purchaser desired the paper to be signed by the parties interested in the property.

*Morawetz* testified to the effect that they came down to $50,000 net cash; that the plaintiff came in, and brought a piece of paper, a contract or something else, and said he had got a buyer, and offered the paper to him, and that he got that check here; that he then told him he would not accept anything, because he was not authorized to sell the property, that it was not in his hands to sell; he only owned one undivided third of it, and he could not do anything in the matter until he saw the other parties; that plaintiff left the paper with him to show to the other parties and see what they would say; that it was shown to them, and they refused to do anything about it. He further testified that he told *Oliver* he would be glad to get the property off his hands; that he wanted to sell it on account of the estate; he was glad to dispose of it. And, being asked why he did not give back the receipt or contract, he replied: "I was not authorized to sell the property." He also testified that he kept the receipt for two or three days, because the plaintiff wanted him to show it to the other interested parties; and that he never authorized the plaintiff to sell the property otherwise than for cash.

The evidence was quite conflicting in respect to some of the matters in question. The plaintiff was finally informed that the consent of the other parties had not been obtained, and consequently the receipt was not signed by the defendant or by any of the owners, and particularly that Mr. Bremer was opposed to the sale, so it was not completed.

The court of its own motion submitted to the jury four questions to be answered in connection with the general verdict. Neither party requested a special verdict. These questions and answers are as follows: "(1) Did the defend-

Oliver vs. Morawetz.

ant, at any time prior to the alleged sale of real estate upon which this action is predicated, represent to plaintiff that he (the defendant) was authorized to sell said real estate? Answer: Yes. (2) When the price of said real estate was reduced from $60,000 to $50,000, was the plaintiff authorized by the defendant to sell the same on easy terms, or was he restricted to a sale for cash? Answer: Easy terms. (3) Did the defendant, on the day when the paper in evidence, marked 'Plaintiff's Exhibit A,' was presented to him, but before it was so presented, authorize the plaintiff to sell said real estate upon the terms stated in said paper? Answer: Yes. (4) You find for the plaintiff or for the defendant, and, if for the plaintiff, at what sum do you assess his damages? Answer: Plaintiff, $1,275."

There was a motion for a new trial, on the ground that the verdict was against the weight of evidence, and for error in the charge to the jury, and because the court ordered a special verdict of its own motion after the opening argument of the plaintiff was finished, and at the end of the argument for the defendant, which motion was denied; and the plaintiff had judgment on the verdict, from which the defendant appealed. The defendant excepted to the charge in various respects, particularly in charging that the burden of proof was on the plaintiff to establish the first and second questions in the special verdict, and informing the jury that the third question was the vital question, but saying nothing as to the burden of proof on that question; that the court should have charged that the burden of proof was on the plaintiff throughout the whole case; and to the statement that if the defendant was not, and never pretended to be, the agent for the sale of the property, it was his right to the very last to refrain from closing the deal.

For the appellant there was a brief by *Timlin & Glicksman*, and oral argument by *W. H. Timlin*. Among other things, they contended that if the principal is disclosed, and

the agent is known to be acting as such, the latter cannot be held personally liable unless he has agreed to be so. The mere use of a pronoun applicable to the agent himself is not sufficient to bind him. *Whitney v. Wyman*, 101 U. S. 392; *Hall v. Lauderdale*, 46 N. Y. 72; *McCurdy v. Rogers*, 21 Wis. 199; *Charboneau v. Henni*, 24 id. 250; *Kean v. Davis*, 20 N. J. Law, 425, 428.

For the respondent there was a brief by *Smith & Weller* and *G. D. Goff*, attorneys, and *Charles F. Hunter*, of counsel, and oral argument by *Mr. Hunter*.

PINNEY, J. 1. The findings of the jury are plainly supported by the evidence, and the court properly refused to set aside the verdict on the motion of the defendant, as being against the weight of evidence. If the defendant acted and contracted avowedly as the agent of his co-owners of the property to be sold, who were known as principals, his acts and contracts within the scope of his authority would be considered the acts and contracts of the principals, and would involve no liability on the part of the defendant, *Morawetz*, as their agent; for the presumption is that an agent always intends to bind his principal, and not himself, although he may pledge his own private credit, and obligate himself to the performance of a contract which otherwise would devolve on his principal. Under the facts in this case, the defendant was, we think, properly held liable, and the recovery, beyond any fair question, is right, and should be affirmed.

It was found, in answer to the first question submitted to the jury for a general verdict, that the defendant represented to *Oliver*, the plaintiff, that he (*Morawetz*) was authorized to sell the real estate in question upon the terms stated in the receipt in evidence. After the plaintiff had performed his undertaking and procured a purchaser, the defendant, as well as his co-owners, refused to sign the paper

or carry out and conclude the sale. He testified at the trial, in most explicit terms, that he was not authorized to sell the property. He had induced the plaintiff to act in the premises, and procure a purchaser upon the specified terms. He was therefore bound to make the agreement good, or be responsible for the consequences. Mechem, Agency, §§ 541, 542. He must be regarded as insuring the plaintiff against the consequences arising from the want of such authority, namely, the loss of his commission thus earned, by reason of the defendant's want of authority to bind his co-owners. *Kroeger v. Pitcairn*, 101 Pa. St. 311. In that case the general rule was stated to be that " whenever any party undertakes to do any act as the agent of another, if he does not possess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will be personally liable to the person with whom he is dealing for and on account of his principal." Story, Agency, § 264. In *Baltzen v. Nicolay*, 53 N. Y. 467, it was said that " the reason why the agent is liable in damages to the person with whom he contracts, when he exceeds his authority, is that the party dealing with him is deprived of any remedy upon the contract against the principal. The contract, though in form the contract of the principal, is not his in fact; and it is but just that the loss occasioned by there being no valid contract with him should be borne by the agent who contracted for him without authority."

In *Kroeger v. Pitcairn, supra,* it was laid down that: " The cases in which agents have been held liable personally have sometimes been classified as follows, namely: (1) Where the agent makes a false representation of his authority with intent to deceive; (2) where, with knowledge of his want of authority, but without intending any fraud, he assumes to act as though he were fully authorized; (3) where he undertakes to act, *bona fide* believing he has authority but in fact has none, as in the case of an agent acting under a forged.

power of attorney. As to cases fairly brought within either of the first two classes, there cannot be any doubt as to the personal liability of the self-constituted agent; and his liability may be enforced either by an action on the case for deceit or by electing to treat him as principal. While the liability of agents in cases belonging to the third class has sometimes been doubted, the weight of authority appears to be that they are also liable. This whole doctrine proceeds upon a plain principle of justice; for every person so acting for another, by a natural, if not a necessary, implication, holds himself out as having competent authority to do the act; and he thereby draws the other party into a reciprocal engagement. If he has no such authority and acts *bona fide*, still he does a wrong to the other party; and if that wrong produces injury to the latter, owing to his confidence in the truth of an express or implied assertion of authority by the agent, it is perfectly just that he who makes such assertion should be personally responsible for the consequences, rather than that the injury should be borne by the other party who has been misled by it." " Much question has been raised as to the form of action in which the agent who acts without authority is held to be liable,— whether assumpsit can be maintained or only a special action on the case. Where an agent who knows that he has no authority makes express assertions that he possesses it, or so acts as to amount to an assertion of authority, and by so doing deceives and injures the other party, who has relied thereon, it cannot be doubted that an action on the case for the deceit is an appropriate remedy. At the same time, an action of assumpsit upon the express or implied warranty of authority might also be maintained, instead of the action on the case. Where, however, the agent, acting in good faith and supposing himself authorized, has made express or implied assertions of authority, an action of assumpsit seems the more appropriate remedy." Mechem,

Agency, § 549. Later and better considered opinion seems to be that the liability, when the contract is made in the name of his principal, rests upon implied warranty of authority to make it, and the remedy is by an action for its breach. *Collen v. Wright*, 8 El. & Bl. 647; *White v. Madison*, 26 N. Y. 117; *Dung v. Parker*, 52 N. Y. 494. " Later cases," says SCUDDER, J., in *Patterson v. Lippincott*, 47 N. J. Law, 457, " hold that he may be sued either for a breach of warranty or for deceit, according to the facts in each case."

The defendant asserted his authority to make the sale, and induced the plaintiff to undertake to and procure a purchaser, as he did. The defendant is now in court, both as a party and as a witness, denying that he had any such authority, and is therefore chargeable with having deceived and injured the plaintiff, who relied on his assertions. An action on the case for such a deceit would be a proper remedy, and assumpsit might, as we have seen, be maintained upon the express warranty or assurance of his authority. For these reasons, the defendant was liable, and the recovery against him is clearly right. It is therefore immaterial whether the charge of the court was strictly correct. It is clear that it cannot be regarded as containing error prejudicial to the defendant's rights; for, as we have said, upon the first finding of facts and the uncontradicted evidence of the defendant he was liable. It is not material, therefore, to notice the exceptions taken to the instructions; for, in the view we have taken of the case, they become immaterial, and cannot be said to be prejudicial to the rights of the defendant, and do not constitute reversible error.

2. The court submitted the case under the statute for a general verdict, and for answers to certain specified questions submitted in connection therewith. R. S. sec. 2858. This was entirely proper, and we think that the practice pursued by the court in the present instance is free from

objection. *Schatz v. Pfeil*, 56 Wis. 429. The recovery upon the whole record is therefore clearly right, and we fail to perceive any sufficient reason for disturbing it.

*By the Court.*— The judgment of the circuit court for Milwaukee county is affirmed.