CLEMENTS *v.* CITIZENS' BANK OF BOONEVILLE.

Opinion delivered October 1, 1928.

*I. J. Friedman* and *John D. Arbuckle,* for appellant.

*W. L. Kincannon* and *Evans & Evans,* for appellee.

MEHAFFY, J. This suit was begun in the Logan Circuit Court by Charles Clements, appellant, to recover from the Citizens' Bank of Booneville and Charles X. Williams, cashier, on the following contract:

"To Charles Clements,
248 Boyleston St.,
Boston, Mass.

"We, the Citizens' Bank, guarantee the payment of a sum not to exceed $1,000 (one thousand dollars) payment for monument Clements No. 60772, purchased by the Booneville Marble and Granite Works of Booneville, Arkansas, on the following conditions: That the monument be cut strictly in accordance with the blue-print approved by the said Booneville Marble and Granite Works and submitted to the above Chas. Clements for the execution of the same. Further, that this amount shall cover all expenses connected with the purchase of material of which the monument is to be cut, also the material for a marker ordered this date. All monument and marker to be loaded on cars at Boston, Massachusetts.

"The Citizens' Bank undertakes that the purchase price for this work is not due until a period of sixty days from date of invoice with bill of lading.

"Citizens' Bank,
"By Chas. X. Williams, Cashier."

The case was appealed to this court, and is reported in 172 Ark. 1023, 291 S. W. 439.

It is unnecessary to set out the testimony in detail. The case was tried and submitted to the jury under instructions by the court, and the jury returned a verdict for the Citizens' Bank of Booneville. This court held, when the case was here on appeal before:

"If the contract of guaranty is for the bank's own protection, or is incidental to the transaction of its own business or for its own benefit, it may give a guaranty."

However, unless it is for the bank's protection, or is incidental to the transaction of its own business or for its benefit, it would not have authority to give a guaranty.

It was held on former appeal that § 700 of Crawford & Moses' Digest, prohibiting officers or employees from indorsing, selling, pledging or hypothecating any notes, bonds or any other obligations, etc., until authority was given by the board of directors and a written record made, was applicable to the guaranty in this case, the court holding that there was no reason why the officers of the bank should be prohibited from transacting the business enumerated without getting authority from the board and yet permit the cashier to bind the bank by guaranteeing the debt of another.

The law was settled on the former appeal, and the court submitted the question of the bank's liability under the facts proved to the jury, and there is no objection to the instructions given by the court so far as the liability of the bank is concerned. Appellant's only objection to the instructions is that the court erred in directing a verdict for Williams, the cashier. Therefore the only question for this court, so far as the liability of the bank is concerned, is the question whether there is any substantial evidence to sustain the verdict.

While the circumstances indicate that the officers of the bank had permitted the cashier to manage the affairs of the bank just as he saw proper, yet the question as to whether they had given him the authority mentioned in the statute and made a record of it as required by law, was properly submitted to the jury, and there is substantial evidence to support the verdict, and it is therefore binding on this court.

It is contended, however, by the appellant that the court erred in directing a verdict for Williams, the cashier. The court instructed the jury to return a verdict in favor of the cashier on the theory that the cause

of action against him was barred in three years, and no suit was begun against him until something like four years. As to whether the action was barred against the cashier, depends upon the nature of his liability. When an agent makes a contract for a principal which he has no authority to make, or a contract in excess of his authority, and, because of either not having authority or exceeding his authority, does not bind the principal, he is bound himself. Some courts have held that an action may be maintained against him on the contract on the theory that he intended to bind some one by the contract, and, if he did not bind the principal, he would bind himself. But the great weight of authority is to the effect that, while the agent is liable, he is not liable on the contract. It is said by a text-writer:

"Whether the agent can be held liable upon the contract itself which he has, without authority, assumed to make, is a question which has been much discussed and upon which the cases cannot be entirely reconciled. It would seem, however, that this question is one which must be determined largely by the circumstances of each case. Where the promise is made in the name of a principal who might have authorized it and as his contract, the better opinion is that the agent cannot be held liable upon it, but only in an action based upon the deceit, or upon the contract of warranty or indemnity, even in the case of a written contract, where the assumed relation of agency appears upon the face of it. Some courts have indeed manifested a disposition in this latter case to reject the words referring to the alleged principal as mere surplusage, and to hold the agent liable upon the remainder as upon his own contract. This, however, as has been well said, is rather to make a new contract for the parties than to construe the one which they have made for themselves." Mechem on Agency, 2d edition, vol. 1, 1023-4.

"The proper remedy against an agent by a third party, with whom the agent has dealt, where the agent acts without, or in excess of, his authority, is an action

of assumpsit upon his expressed or implied warranty of authority, or, in a proper case, an action of trespass on the case for fraud and deceit, and in some jurisdictions the latter is held to be the only remedy in such cases." 2 C. J. 892.

"Some of the authorities hold that, in all written contracts, except specialties, if the pretended agent has so worded the instrument as to make it appear that he is acting for or on behalf of another, and not himself— having no authority to do so—he binds himself personally, and will be liable in an action on the contract itself, for the reason that he must have intended to bind some one; and, if he was unauthorized to bind the principal, he is estopped to deny that he intended to bind himself, as in that case no one whatever would be bound. But the objection to this doctrine is that it would require the court to make a new contract for the parties, or one into which they have not themselves entered; and the courts now generally repudiate it. While the decisions are not uniform, the great weight of modern authority is that the agent is not personally bound on the contract itself, and cannot be held liable in an action thereon." *LeRoy* v. *Jacobosky*, 136 N. C. 443, 48 S. E. 796, 67 L. R. A. 977.

In discussing the liability of agents under circumstances like this, the Wisconsin court said:

"This whole doctrine proceeds upon a plain principle of justice; for every person so acting for another, by a natural, if not a necessary, implication, holds himself out as having competent authority to do the act, and he thereby draws the other party into a reciprocal engagement. If he has no such authority, and acts *bona fide,* still he does a wrong to the other party; and, if that wrong produces injury to the latter, owing to his confidence in the truth of an express or implied assertion of authority by the agent, it is perfectly just that he who makes such assertion should be personally responsible for the consequences, rather than that the injury should be borne by the other party who has been misled by it. * * * Later and better considered opinion seems to

be that the liability, when the contract is made in the name of his principal, rests upon implied warranty of authority to make it, and the remedy is by an action for its breach." *Oliver* v. *Morawetz,* 97 Wis. 332, 72 N. W. Rep. 877. And the Supreme Court of Oregon has said:

"Though the agent who has exceeded his authority cannot be sued on the contract itself, as a party thereto, unless it contains apt words to charge him, an action may be maintained against him on his implied promise that he had authority to bind the principal. * * * This promise is not a part of the agreement supposed to have been entered into with the principal, but independent thereof, and tantamount to an implied warranty that, if a third party will enter into a contract with the agent on behalf of his principal, he will indemnify such party against any loss that he may sustain, if it shall be ascertained that he does not possess the measure of authority which he assumes. Such warranty being impliedly given, it cannot be said that in enforcing it the court makes a new contract for the agent and a third party." *Anderson* v. *Adams,* 43 Ore. 621, 74 Pacific Rep. 215.

"As we have seen, the authorities have been conflicting as to whether the agent could be held liable on the instrument, the weight of authority being in the negative." *Haupt* v. *Vint,* 68 W. Va. 657, 70 S. E. 702, 34 L. R. A. (N. S.) 518.

The authorities seem to be unanimous in holding that the agent, under such circumstances, is liable, and almost unanimous in holding that an action cannot be maintained on the contract itself, but on an implied promise on the part of the agent that he has the authority to make the contract. If suit could have been maintained on the contract itself, the cause of action would not have been barred, because it could have been begun any time within five years. But this is a suit on an implied contract not in writing, and it was barred within three years.

We are therefore of the opinion that the court did not err in directing a verdict for Williams, and the judgment of the circuit court is affirmed.