David HART *v.* Larry BRIDGES

CA 89-477                                    786 S.W.2d 589

Court of Appeals of Arkansas
Division I
Opinion delivered March 21, 1990

*Mitchell and Roachell*, by: *Paul J. Ward*, for appellant.

*Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.*, by: *Dan F. Bufford* and *Brian Allen Brown*, for appellee.

DONALD L. CORBIN, Chief Judge. This appeal comes to us from Sebastian County Circuit Court, Greenwood Division. Appellant, David Hart, sued appellee, Larry Bridges, alleging that appellee, a principal for the Greenwood School District, had offered him a teaching job, which he accepted, and that, in reliance upon appellee's promise of a job, he had incurred financial obligations and suffered mental anguish and distress. Appellee moved for and was granted summary judgment. From the order granting summary judgment comes this appeal. We reverse and remand.

Appellant was employed by the Ozark School District in the 1986-87 school year, and appellee was a junior high school principal for the Greenwood School District. At the end of that school year, the Ozark School District terminated appellant's employment because of his failure to obtain proper certification. Shortly thereafter, he applied for employment with the Greenwood School District and was interviewed by appellee for a position teaching eighth grade science and math. The Greenwood School Board instructed appellee to select an applicant and have the applicant sign an employment contract to be presented for review and approval at the July 1987 school board meeting. Appellee obtained appellant's signature on a contract and, at the July 1987 meeting, presented it to the school board with his recommendation that appellant be hired. Because of his failure to pass the National Teachers' Exam and his difficulties with obtaining certification, the school board refused to approve appellant and did not sign the contract.

On February 7, 1989, appellant sued appellee and stated that appellee had offered appellant a job with the school district, which he had accepted, and that, in reliance upon appellee's promise of a job, appellant purchased an automobile, incurred other financial obligations, and suffered mental anguish and distress. The school district was not included as a defendant in the lawsuit. In his answer, appellee stated that he had not offered

appellant a job; that he had no authority to do so; and that teacher contracts can be approved only by the school board.

In his answers to appellee's requests for admission, appellant admitted that he never received a written contract signed by appellee or any member of the Greenwood School Board.

On May 26, 1989, appellee moved for summary judgment on the grounds that he was merely the agent of a disclosed principal (the Greenwood School District) and lacked the power to employ teachers and only written contracts for the employment of teachers are enforceable. The affidavits of appellee, Kenny Bell, a member of the Greenwood School Board, and Gail Martin, president of the Greenwood School Board, were attached to the motion.

In his affidavit, appellee stated:

2. In May of 1987, Mr. Steve Perdue resigned as teacher of Eighth Grade Science and Math at the Raymond E. Wells School.

3. Thereafter, I began reviewing applications and conducted several interviews for the purpose of hiring a replacement for Mr. Perdue.

4. That I interviewed five applicants, including Mr. Dan Lokey and Mr. David Hart.

5. That, however, Mr. Dan Lokey was my first choice and Mr. Hart was my second.

6. That on June 4, 1987, I recommended Mr. Lokey to the Board, and he was approved and hired. Shortly, thereafter, Mr. Lokey informed me that this family had a change in their plans and that he would have to turn down the job.

7. That during the June, 1987, Board meeting, and because of the urgency to get a teacher hired, the Board instructed me to select another applicant, have this applicant sign a proposed employment contract with the District, and present this applicant and his proposed contract at the July, 1987, meeting for the review and approval by the Board.

8. I was not instructed or authorized to hire an applicant, but merely told to obtain his signature on a proposed contract, which would then be reviewed and approved by the Board before it became effective.

9. In early July, 1987, I met, again, with David Hart. At this meeting, I explained these circumstances to Mr. Hart and I explained to him that I would recommend his hiring to the Board. I did tell Mr. Hart that I was confident that the Board would hire him, and asked him to sign the proposed employment contract so that the contract would be prepared and signed, awaiting Board approval and their signatures.

10. At no time did I ever tell Mr. Hart that he was hired by either me or the School District, or that I had any authority to hire him. Furthermore, I never signed the proposed contract or any other document purporting to be an employment contract with the School District.

11. At the July, 1987 meeting of the Greenwood School Board, I recommended that they hire David Hart and presented his proposed contract. However, the members of the board were unwilling to approve Mr. Hart or sign the proposed contract because of difficulties with Mr. Hart's certification and his failure to pass the National Teachers' Exam.

In his response to appellee's motion for summary judgment, appellant argued that he had not sued appellee for breach of an employment contract but that appellee had misled him into believing that he had a job with the school district. Appellant also argued that a school board is not prohibited from delegating the power to hire teachers to an agent and that appellant reasonably believed that appellee had this power. Appellant attached his affidavit wherein he stated that, during his interview, appellee told him that he had authority to hire a teacher; that appellee had offered him a job; that appellee told him to report for work on August 25, 1987; and that, because appellee had believed he would be employed by the district, he had bought a new car and entered summer school classes to complete his certification requirements.

On June 20, 1989, the Sebastian County Circuit Court entered summary judgment for appellee. In his findings, the circuit judge stated:

2. The Plaintiff alleges that he was misled by the defendant, an agent of the School District, that he had authority to hire the plaintiff as a teacher, the plaintiff relied upon the representations of the defendant, and this reliance caused him resulting damage for mental auguish, lost earnings from the promised contract, and financial loss he incurred in purchasing an automobile and expenses for further education.

3. The Plaintiff did not have a written contract (Ark. Code Ann. Section 6-17-919 (2)) and the offer of a teaching position by the defendant and accepted by the plaintiff was never approved by the Board of Directors of the Greenwood School District. Ark. Code Ann. Section 6-13-620(3)

4. As a matter of law, the plaintiff, an experienced teacher, could not have reasonably been misled by the statements of the defendant (agent) in excess of the authority given to him by the School District (Principal) that he could hire the defendant to teach at Greenwood in view of the fact that he should reasonably have known under the facts and circumstances that he had to have a written Contract approved by the Greenwood School District Board for it to be an enforceable Contract.

5. Therefore, the Plaintiff, in view of *Ark. Code Ann.* Sections 6-17-919(2) and 6-13-620(3), could not have justifiably relied upon defendants' representations and as a result sustain damages. (AMI 405)

On appeal, appellant emphasizes that he has not based this lawsuit upon the contract with the school district into which he thought he had entered, but upon appellee's breach of promise. Appellant contends that appellee's false representations that he had authority to hire appellant and that appellant would have a job with the school district are the bases for this suit. Appellant argues that, even though he had no enforceable contract with the school district, appellee is liable for his damages because an agent

who contracts in the name of his principal without authority may be personally liable to the other party.

Summary judgment is an extreme remedy and should be granted only when it is clear that there is no issue of fact to be decided. *Johnson* v. *Stuckey & Speer, Inc.,* 11 Ark. App. 33, 35, 665 S.W.2d 904, 906 (1984). The object of summary judgment is not to determine any issue of fact, but to determine whether there is an issue of fact to be tried; if there is any doubt, the motion should be denied. *Rowland* v. *Gastroenterology Assoc., P.A.,* 280 Ark. 278, 280, 657 S.W.2d 536, 537 (1983). Summary judgment should be granted only when a review of the pleadings, depositions, and other filings reveals that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Township Builders, Inc.* v. *Kraus Constr. Co.,* 286 Ark. 487, 490, 696 S.W.2d 308, 309 (1985). Once the moving party makes a prima facie showing of entitlement to summary judgment, the party opposing summary judgment must meet proof with proof by showing a genuine issue as to a material fact. *Hughes Western World, Inc.* v. *Westmoor Mfg. Co.,* 269 Ark. 300, 301, 601 S.W.2d 826, 827 (1980).

We agree with appellee that appellant had no enforceable contract with the school district. We agree with appellant, however, that the statutes relied upon by appellee simply do not address the issue here, and do not bar appellant from bringing an action against appellee. Arkansas Code Annotated Sections 6-13-620(3) (Supp. 1989) and 6-17-919 (1987) provide that teachers' contracts are to be in writing and that these contracts shall be made with the school board. Arkansas Code Annotated Section 6-17-302(c) (1987) provides that public school principals shall "submit recommendations to the superintendent regarding the appointment, assignment, promotion, transfer, and dismissal of all personnel assigned to the attendance area." This code section also makes it clear that the principal is under the supervision of the school board.

In *Morton* v. *Hampton School Dist. No. 1,* 16 Ark. App. 264, 266, 700 S.W.2d 373, 375 (1985), we affirmed the trial court's finding that, in order to be enforceable, a teacher's contract must be in writing and signed by the secretary and president of the school board or a majority of the members of the

board. In that case, a principal had sued the school district for its failure to renew his contract. In our decision in *Morton*, we relied upon *Johnson* v. *Wert*, 225 Ark. 91, 279 S.W.2d 274 (1955). In *Johnson*, the school board had voted to give Johnson, its superintendent, a two-year contract, but before it was prepared, a school board member asked Johnson to resign. In Johnson's breach of contract suit, the supreme court affirmed the trial court's directed verdict for the school board and stated:

> In *Bald Knob Special School Dist.* v. *McDonald*, 171 Ark. 72, 283 S.W. 22, we held the requirement of a similar statute that employment be by written contract to be mandatory and not merely directory as appellant contends. This holding conforms to the general rule that compliance with the formal requisites prescribed by statute is essential to the validity of a teacher's or superintendent's contract except insofar as the statutory requirements are directory only. 78 C.J.S., Schools and School Districts, Section 189.
>
> It is also well settled that in order to be entitled to recover compensation, a teacher must have been appointed or elected to the position for which it is sought, and have a valid contract for his services. 78 C.J.S., Schools and School Districts, Section 218c.

225 Ark. at 95, 279 S.W.2d at 276. *Accord Corbin* v. *Special School Dist. of Ft. Smith*, 250 Ark. 357, 365, 465 S.W.2d 342, 346 (1971); *Marr* v. *School Dist. No. 27*, 107 Ark. 305, 308, 154 S.W. 944 (1913).

■ Our inquiry cannot end with a review of the statutes and cases dealing with teachers' contracts, however. Appellant is correct in his assertion that, generally, an agent who contracts in the name of his principal without authority, so that the principal is not bound, may be personally liable to the other contracting party. *See Lasater* v. *Crutchfield*, 92 Ark. 535, 538, 123 S.W. 394, 395 (1909). In such cases, the law may imply a contract between the injured party and the agent upon the agent's implied warranty of his authority. *Dale* v. *Donaldson Lumber Co.,* 48 Ark. 188, 192, 2 S.W. 703, 704 (1886). In *Clements* v. *Citizens' Bank of Booneville*, 177 Ark. 1085, 9 S.W.2d 569 (1928), the Arkansas Supreme Court discussed this issue:

"Whether the agent can be held liable upon the contract itself which he has, without authority, assumed to make, is a question which has been much discussed and upon which the cases cannot be entirely reconciled. It would seem, however, that this question is one which must be determined largely by the circumstances of each case. Where the promise is made in the name of a principal who might have authorized it and as his contract, the better opinion is that the agent cannot be held liable upon it, but only in an action based upon the deceit; or upon the contract of warranty or indemnity, even in the case of a written contract, where the assumed relation of agency appears upon the face of it. Some courts have indeed manifested a disposition in this latter case to reject the words referring to the alleged principal as mere surplusage, and to hold the agent liable upon the remainder as upon his own contract. This, however, as has been well said, is rather to make a new contract for the parties than to construe the one which they have made for themselves." Mechem on Agency, 2d edition, vol. 1, 1023-4.

"The proper remedy against an agent by a third party, with whom the agent has dealt, where the agent acts without, or in excess of, his authority, is an action of assumpsit upon his expressed or implied warranty of authority, or, in a proper case, an action of trespass on the case for fraud and deceit, and in some jurisdictions the latter is held to be the only remedy in such cases." 2 C.J. 892.

"Some of the authorities hold that, in all written contracts, except specialties, if the pretended agent has so worded the instrument as to make it appear that he is acting for or on behalf of another, and not himself having no authority to do so — he binds himself personally, and will be liable in an action on the contract itself, for the reason that he must have intended to bind some one; and, if he was unauthorized to bind the principal, he is estopped to deny that he intended to bind himself, as in that case no one whatever would be bound. But the objection to this doctrine is that it would require the court to make a new contract for the parties, or one into which they have not

themselves entered; and the courts now generally repudiate it. While the decisions are not uniform, the great weight of modern authority is that the agent is not personally bound on the contract itself, and cannot be held liable in an action thereon." *LeRoy* v. *Jacobosky*, 136 N.C. 443, 48 S.E. 796, 67 L.R.A. 977.

In discussing the liability of agents under circumstances like this, the Wisconsin court said:

"This whole doctrine proceeds upon a plain principle of justice; for every person so acting for another, by a natural, if not a necessary, implication, holds himself out as having competent authority to do the act, and he thereby draws the other party into a reciprocal engagement. If he has no such authority, and acts *bona fide*, still he does a wrong to the other party; and, if that wrong produces injury to the latter, owing to his confidence in the truth of an express or implied assertion of authority by the agent, it is perfectly just that he who makes such assertion should be personally responsible for the consequences, rather than that the injury should be borne by the other party who has been misled by it. * * * Later and better considered opinion seems to be that the liability, when the contract is made in the name of his principal, rests upon implied warranty of authority to make it, and the remedy is by an action for its breach." *Oliver* v. *Morawetz*, 97 Wis. 332, 72 N.W. Rep. 877. And the Supreme Court of Oregon has said:

"Though the agent who has exceeded his authority cannot be sued on the contract itself, as a party thereto, unless it contains apt words to charge him, an action may be maintained against him on his implied promise that he had authority to bind the principal. * * * This promise is not a part of the agreement supposed to have been entered into with the principal, but independent thereof, and tantamount to an implied warranty that, if a third party will enter into a contract with the agent on behalf of his principal, he will indemnify such party against any loss that he may sustain, if it shall be ascertained that he does not possess the measure of authority which he assumes. Such warranty being impliedly given, it cannot be said that

in enforcing it the court makes a new contract for the agent and a third party." *Anderson* v. *Adams*, 43 Ore. 621, 74 Pacific Rep. 215.

"As we have seen, the authorities have been conflicting as to whether the agent could be held liable on the instrument, the weight of authority being in the negative." *Haupt* v. *Vint*, 68 W. Va. 657, 70 S.E. 702, 34 L.R.A. (N.S.) 518.

The authorities seem to be unanimous in holding that the agent, under such circumstances, is liable, and almost unanimous in holding that an action cannot be maintained on the contract itself, but on an implied promise on the part of the agent that he has the authority to make the contract.

177 Ark. at 1088-90, 9 S.W.2d at 570-71. *Accord Hill* v. *First Nat'l Bank of Malvern*, 129 Ark. 265, 268-69, 195 S.W. 678, 680 (1917).

██ Here, the circuit judge granted summary judgment to appellee on the ground that appellant could not reasonably have been misled by appellee, since appellant should have known that he could not have an enforceable contract unless it was in writing and approved by the school board. It is true "that all persons who deal with school officers are presumed to have knowledge of the extent of their powers." *Ark. Nat'l Bank* v. *School Dist. No. 99*, 152 Ark. 507, 511, 238 S.W. 630, 631 (1922). Nevertheless, Arkansas recognizes the liability of an agent for contracts created outside his authority for a disclosed principal. Appellant argues that the statutes dealing with teachers' contracts simply do not apply to this situation, and we agree. It cannot be held as a matter of law that these statutes absolutely bar an action against a school principal for damages allegedly caused by his actions in excess of his authority.

█ We therefore cannot agree with the circuit judge that no material issue of fact remains for trial. In *Dickson* v. *Delhi Seed Co.*, 26 Ark. App. 83, 93, 760 S.W.2d 382, 388 (1988), we stated that "[i]t is well settled that whether estoppel is applicable is an issue of fact to be decided by the trier of fact," and held that summary dismissal of the complaint was not appropriate because a question of fact existed. There is no question that the parties in

the case at bar disagree as to whether appellee misrepresented his authority and that appellant was to be hired. Additionally, whether appellant relied on appellee's representations, whether appellant's acts in reliance were foreseeable by appellee, and whether appellant acted reasonably in justifiable reliance on appellee's representations are all issues of fact to be decided by the trier of fact. We therefore hold that the trial court erred in granting summary judgment for appellee.

Reversed and remanded.

CRACRAFT and COOPER, JJ., agree.