The Honorable Johnny Key State Senator Post Office Box 350 Mountain Home, Arkansas 72654
Dear Senator Key:
This is in response to your request for my opinion on the following questions:
 1. With no prior approval by its Board of Education, no review by its Personnel Policies Committee, no mention of such in the Board of Education's personnel policies and no inclusion of such on its salary schedule as a fringe benefit, is it legal for a public school district to pay its staff for unused vacation days — at their most recent daily rates of pay — when they retire or leave the district for other employment?
 2. If a public school district's Board of Education adopts a policy which provides that staff members are to be paid for their unused vacation days — at their most recent daily rates of pay — when they retire or leave the district for other employment, must such a policy to [sic] be considered as a staff fringe benefit and, if so, must the fringe benefit be included on the district's salary schedule?
 3. Given the scenario in #2 above, is it legal for a district to pay staff members their most recent daily rates of pay for unused vacation days if a portion or all of those days were accrued at times when the staff members were paid daily rates of pay which were less than their most recent daily rates of pay? *Page 2 
 4. With no approval by its Board of Education, no review by its Personnel Policies Committee, no mention of such in the Board of Education's personnel policies and no inclusion of such on its salary schedule as a fringe benefit, if the superintendent of a public school district, over a period of time, permits staff members to be paid for their unused vacation days — at their most recent daily rates of pay when they retire or leave the district for other employment — is such action legal if it is based upon the premise that it was "practiced policy" but not Board approved policy?
 5. With no prior approval by the Board of Education, no review by the District's Personnel Policies Committee, no mention of such in the Board of Education's personnel policies and no inclusion of such on its salary schedule as a fringe benefit, can a district's superintendent be held legally liable if he/she unilaterally authorizes payment of staff members for unused vacation days — at their most recent daily rates of pay — when they retire or leave the district for other employment?
 6. Given the scenario as [sic] #5 above, can a district's Board of Education and/or its individual member be held liable for such action by the district's superintendent?
 7. Given the scenario in #5 above, can a district force staff members who have been illegally paid for unused vacation days — at their recent daily rates of pay — to reimburse the district for such payments?
RESPONSE
With respect to your first question, I assume you are asking whether a school district can contractually bind itself to pay staff for unused vacation days if the recited procedural steps have not been observed. In my opinion, the basic and sole requirement to render "legal" a school-district contract to pay district staff for accrued vacation time upon a staff member's retirement or departure from *Page 3 
employment is the written approval of the board of directors. The question of whether some extra-contractual equitable claim might support a claimant's recovery will turn on factual considerations that I am unable to address. With respect to the procedural steps recited in your question other than proper — i.e., written — board approval, in my opinion a failure to follow these steps involves "legal" issues only to the extent that the failure properly to develop and to file personnel policies and salary schedules might result in financial sanctions by the state. In my opinion, such "legal" consequences do not bear on the "legality" of a district's contractual obligations, which, if falling within the scope of the board's authority to negotiate, are rendered "legal" solely by dint of the board's written approval.
With respect to your second question, the Code specifies that providing a monetary payment at whatever rate, regardless of whether such payment is dubbed a "fringe benefit," constitutes an "actual pay practice" of the sort that should be "included on the district's salary schedule." (This practice, however, does not appear to be routinely, if ever, followed by the school districts.) Assuming, as you appear to have done, that the board has properly (i.e., in writing) approved a policy that falls within the scope of its authority to endorse, I do not believe that a failure to reference the policy on a salary schedule would render the underlying contractual obligation "illegal." The only potential "legal" consequence of such a failure might be (although, as a practice, it does not ever appear to have been realized) a financial sanction against the district by the state.
In my opinion, assuming the underlying commitment to pay for unused vacation days is "legal" in the sense of having been properly approved by the board, the answer to your third question is, in all likelihood, "yes." A school board has great discretion to determine compensation policy with respect to payments in excess of statutorily mandated minimums. I believe it might adopt a policy of reimbursing district staff for unused vacation days at an employee's most recent rate of pay, particularly because the value of vacation time at any given point, whether the leave be taken or redeemed, is the value of the employee's services at that time. However, I have found no authority directly addressing this issue.
With respect to your fourth question, the district superintendent, in his role as the district's chief executive authority, is empowered to implement board-approved *Page 4 
policy. To the extent that a district superintendent has orally promised and somehow made such payments over time without written board approval, I do not believe the action could be characterized as "legal."
With respect to your fifth question, a district superintendent is cloaked with a qualified immunity from tort liability in the conduct of district affairs unless the conduct was "intentional" in the legal sense of that term. However, complicating the potential application of this immunity is the principle that a district official making contractual representations for a disclosed principal outside the scope of the agent's actual authority may be held personally liable for resultant damages. Also bearing on the question of a supervisor's potential liability is the principle that persons dealing with a school-district officer are presumed to know the extent of the officer's authority. Only a finder of fact acquainted with all the pertinent circumstances could determine a superintendent's potential liability under these principles.
With respect to your sixth question, I do not believe either a school district or individual members of the district board could be held liable for unauthorized contractual representations made by a district superintendent. Although it is conceivable that the action of an individual board member might entail some intentional tortious conduct that would defeat a defense of qualified immunity against any personal claim, only a finder of fact acquainted with all of the circumstances could make this determination.
I cannot directly answer your seventh question because it is unclear what you mean in representing that the staff member has been "illegally paid." A staff member paid for services without proper board authorization may possibly be entitled under standard legal and equitable principles to retain the payment or, alternatively, to seek payment from the superintendent who made an unauthorized promise. Resolution of any such issue will turn upon an analysis of all the attendant circumstances — an enterprise that could only be conducted by a trier of fact.
Question 1: With no prior approval by its Board of Education,no review by its Personnel Policies Committee, no mention of such inthe Board of Education's personnel policies and no inclusion of suchon its salary schedule as a fringe *Page 5 benefit, is it legal for a public school district to pay itsstaff for unused vacation days — at their most recent daily rates ofpay — when they retire or leave the district for otheremployment?
Before addressing your question directly, I should remark on your apparent assumption that it might be legal, if duly adopted, for a school district to enact a policy of reimbursing retiring or departing district staff for unused vacation days. In my opinion, this assumption is almost certainly warranted. This office has previously noted on various occasions that a district has significant discretion in determining salary levels, including increments or supplements thereto, although a district cannot ignore the base-salary minimums established by statute for staff members of equivalent experience.[1]
Policy regarding payment for unused vacation leave might usefully be compared with current policy regarding payment for unused sick leave. With respect to the payment of unused sick leave, the Arkansas Supreme Court has expressly acknowledged that such district-wide discretion exists under the current provisions of the Arkansas Code.[2] Although no comparable statute exists expressly investing a district with the discretion to pay unused vacation leave, I believe such discretion inheres in the general principle that school districts may adjust compensation as they choose subject to the statutory minimums. *Page 6 
As regards the absence of an express statute addressing payment for unused vacation days, I am not ignoring the principle that "the express designation of one thing may properly be construed to mean the exclusion of another."[3] Admittedly, at first blush, this principle might be read as suggesting that the express approval of payment of unused sick leave precludes by implication the payment of unused vacation leave. In my opinion, however, any such application of the principle would be misplaced. I base this conclusion on several considerations. First, the express approval of a school district's discretionary payment of unused sick leave was enacted to repeal what had been an express disapproval of any such payment under prior law.[4] No such restriction existed or exists with respect to the payment of unused vacation leave. Secondly, the rationale for possibly paying for unused vacation leave appears stronger than that for possibly paying for unused sick leave. Vacation leave, after all, entails a right to take paid leave for any or no reason, whereas sick leave entails a right to take leave only for the reason of infirmity. Assuming in any given instance that no infirmity existed and no sick leave was consequently taken, the former proscription against being paid for unused sick leave might seem appropriate, whereas a blanket proscription against payment for unused vacation leave might not. Given this distinction, it seems logical for the legislature to have avoided directly addressing the issue of payment for unused vacation leave, rather leaving policy in this regard to the broad discretion of a school district board. Stated differently, I question whether the legislature's approval of a district's paying for unused sick leave should be read as impliedly denying a school district the discretion to pay a retiring or transferred staff member for unused vacation time. Nevertheless, legislative clarification on this issue might be warranted.
Assuming, then, that a school district, if it so chooses might enact a policy of redeeming unused vacation days under the recited circumstances, at issue in your question is whether such payments would be "legal," presumably in the sense of *Page 7 
being contractually mandated, if the policy (1) has not been approved by the school district's board of directors (an entity you have labeled its "Board of Education"), (2) has not been reviewed by the district's personnel policies committee, (3) is not mentioned in the district's personnel policies and (4) is not listed on the district's salary schedule as a fringe benefit.
Because you have couched your question in a manner that suggests that any of the four purported lapses listed above might render a contractual provision "illegal," I will discuss the implications of each recited situation below. However, in my opinion, only the first of the four recited conditions — i.e., a failure of the board properly to approve the payment — might render the payment "illegal" in the sense of not being contractually mandated.
I base this opinion of the following statutory provisions, which charge a district board with the duty to:
 (4) Enact, enforce, and obey school district policies;
 (5)(A) Employ staff, including:
 * * * (ii)(a) School district employees under initial written employment contracts in the form prescribed by the State Board of Education, not including day-to-day substitutes.
 (b) The employment contract shall:
 (1) State the duration of employment, specific duties of the employee and the annual salary or hourly wage of the employee and projected annual earnings in the case of nonexempt employees under applicable state and federal law; and
 (2) Incorporate all personnel policies adopted by June 30 to be in effect on July 1 of the following employee contract year, subject to *Page 8 
the requirements and exceptions contained in §§ 6-17-204 and 6-17-205.[5]
(Emphasis added.)
In light of the highlighted phrase above, I will assume that your reference to a board's "prior approval" is to an approval cognizable as a contractual commitment insofar as it is evidenced by a writing. Subject to this assumption, I believe the statute just quoted supports the proposition that a school district's obligation to pay an employee for unused vacation days upon the employee's retirement or departure from employment accrues upon the school district's board acceding to this term in a writing that a court would deem sufficient to bind the district.
However, since you have listed various other alternative scenarios as possibly casting into question the "legality" of a promise to redeem unused vacation days under the recited terms, I will briefly consider the possible effects of the lapses you have mentioned. In order to do so, I must review the policymaking relationships among a school district board of directors, a school district personnel policies committee and a school district superintendent.[6] Under the Arkansas Code, a district superintendent may recommend to either the board or the committee that a proposal to change or enact a personnel policy be considered and *Page 9 
adopted[7]; either a board or committee may independently make personnel policy proposals, with or without a recommendation by the superintendent; if the board makes such a proposal, the committee must be afforded time to consider and to comment on the proposal; and, ultimately, the board must act independently to adopt or reject the proposal.[8] The superintendent thus has discretionary authority to recommend policy proposals; the committee has the authority to make *Page 10 
independent proposals, possibly including those recommended by the superintendent; and the board has the final authority and duty to act on any personnel proposal, subject to the committee's obligation to act in an advisory capacity regarding the board's own proposals.
Of crucial importance is that only the board can ultimately approve the terms of personnel policy, which may or may not address the issue of redeeming unused vacation days. The foregoing allocation of authority accords with the statutory provision that the board is ultimately responsible for the employment of staff by written contract. Any such contract will be deemed to incorporate the provisions of the personnel policies[9] and will be subject to annual written renewal.[10]
Given the foregoing statutory scheme, a question exists whether a failure to submit a contract proposal to a personnel committee for review, a failure to incorporate into the personnel policy manual an approved policy such as payment for accrued vacation days or a failure to report a vacation-day policy on the salary schedule might independently render a contract of the sort at issue "illegal." In my opinion, the answer to this question is "no." The sine quanon for purposes of ensuring a school-district contract's legality is memorializing the contract in writing. Although the Code anticipates that a personnel committee will advise the board and that the state's payment of funds to the district may hinge upon the filing of an accurate salary schedule, no provision of the Code suggests that a contract executed by the board and a district employee, thus reflecting the requisite *Page 11 
"meeting of the minds" essential to the formation of a contract, [11] will be "illegal" for failure to observe these formalities.[12]
As regards the separate question of what might be the effect of a district superintendent's independently purporting to adopt and to administer a policy of redeeming unused vacation days upon a staff member's retirement or departure from employment, see my response to questions four and five, infra.
 Question 2: If a public school district's Board of Educationadopts a policy which provides that staff members are to be paid fortheir unused vacation days — at their most recent daily rates ofpay — when they retire or leave the district for other employment,must such a policy to [sic] be considered as a staff fringe benefitand, if so, must the fringe benefit be included on the district'ssalary schedule?
You appear to assume in your question that the district board has properly adopted a policy of paying for unused vacation days. You focus in this question on whether such payment constitutes a "fringe benefit" subject to inclusion on the salary schedule. The Code expressly provides that the annual salary schedule shall reflect the district's "actual pay practices . . . including all fringe benefits and supplemental salary schedules."[13] In my opinion, regardless of whether the policy of paying for accrued vacation time amounts to a "fringe benefit,"[14] such a policy qualifies as an "actual pay practice" subject to reporting on the district's salary schedule. However, as discussed in my response to your previous question, the apparently common practice of not reporting such a policy as an "actual pay practice" does not render "illegal" a contractual provision to which the district *Page 12 
board has acceded in writing. As regards the computation of such payments at the "most recent daily rates of pay," see my response to the following question.
Question 3: Given the scenario in #2 above, is it legal for adistrict to pay staff members their most recent daily rates of payfor unused vacation days if a portion or all of those days wereaccrued at times when the staff members were paid daily rates of paywhich were less than their most recent daily rates of pay?
At issue is whether the value of vacation days paid to any given district employee, again with proper district-board approval, should be computed based upon the daily rates of pay that applied to the employee when the leave became available or the daily rate that applied at the time the employee received the severance pay.
In my opinion, given the broad range of policy discretion that lies in a school-district board as regards compensation questions, a board could adopt either measure of reimbursement. That said, although I have found no authority that directly addresses this issue, I believe that common sense dictates that the applicable rate of reimbursement should be based upon the staff member's rate of pay as of the date he or she is awarded the payment. I base this conclusion upon the fact that the value to the employer of a staff member's available leave time at any given point is obviously the value of the staff member's services at the point he might take the leave — or, if he so chooses, redeem it. The fact that the employee actually accrued the right to take leave at a point when he was earning less strikes me as immaterial. Under the scenario you have proposed, the staff member, as a condition of his or her employment, is entitled to take leave whose present value will be based upon whatever the employee is earning at the time he or she takes the leave. By extension, the staff member should logically be entitled to redeem the value of unused leave based upon the value of that leave at the time of retirement — a value that would necessarily be that of the staff member's services during the term of what would have been leave time if taken.
Question 4: With no approval by its Board of Education, noreview by its Personnel Policies Committee, no mention of such inthe Board of Education's personnel policies and no inclusion of suchon its salary schedule as a fringe benefit, if the superintendent ofa public school district, over a period of time, permits staffmembers to be paid for their unused vacation days — at theirmost *Page 13 recent daily rates of pay when they retire or leave the districtfor other employment — is such action legal if it is based upon thepremise that it was "practiced policy" but not Board approvedpolicy?
As I discussed above, by statute, the authority to set the terms of a school district's contract with a staff member lies with the board of directors, not the school superintendent.[15] The operative question in determining the "legality" of any "practiced policy" of paying a staff member for unused vacation days is whether the board has approved the policy in writing. If the board has offered such approval in a manner that satisfies a reviewing court — a satisfaction I assume would arise from the court's being presented with some sort of writing establishing the practice — then the policy would appear to be "legal." I do not believe it would be legally permissible for a school district superintendent, without written board approval and based solely upon his own purported authority, "over a period of time" to "permit staff members to be paid for their unused vacation days."
Question 5: With no prior approval by the Board of Education,no review by the District's Personnel Policies Committee, no mentionof such in the Board of Education's personnel policies and noinclusion of such on its salary schedule as a fringe benefit, can adistrict's superintendent be held legally liable if he/sheunilaterally authorizes payment of staff members for unused vacationdays — at their most recent daily rates of pay — when they retire orleave the district for other employment?
As reflected in my response to your previous question, I am unaware of and am not situated to address the factual circumstances under which a particular district superintendent might have "unilaterally authorize[d] payment of staff members for unused vacation days."
With respect to any potential tort liability that might attach to the superintendent, a school superintendent enjoys qualified immunity under the Code for acts of *Page 14 
negligence but not for intentional torts.[16] However, the Arkansas Court of Appeals, relying on precedent from the Arkansas Supreme Court, has recognized that a school official might be held personally liable under principles of agency law for falsely representing that he or she has the authority to make certain contractual representations.[17] The court applied this principle to deny summary judgment even while acknowledging the accepted principle "`that all persons who deal with school officers are presumed to have knowledge of the extent of their powers.'"[18] A clear tension appears to exist between the premise that a school official might be held to account for misrepresenting his authority and the premise that a claimant is presumed to know the extent of that authority. Given that it would seem impossible reasonably to rely upon a claim of authority whose falsity you are legally presumed to recognize, I am unable to speculate how a claimant could be found to have reasonably relied upon a superintendent's misstatement of his authority to contract. Judicial clarification regarding this tension appears warranted. *Page 15 
 Question 6: Given the scenario as [sic] #5 above, can adistrict's Board of Education and/or its individual member be heldliable for such action by the district's superintendent?
I gather the upshot of this question is whether the district board and/or its members may be held vicariously liable for a district superintendent's misconduct in purporting to contract on behalf of the district. In responding to this question, I can only echo what I have stated above. Individual board members are cloaked from tort liability by the qualified immunity discussed in my response to your previous question. The board as a distinct entity will be "liable" in the sense of binding the district to make payment only if principles of contract law — or, perhaps, of equity[19] — so dictate. Any determination regarding either individual board-member liability or the existence of a contractual provision of the sort at issue will be intensely factual and, as such, lies beyond the scope of this office to make.
Question 7: Given the scenario in #5 above, can a districtforce staff members who have been illegally paid for unused vacationdays — at their recent daily rates of pay — to reimburse thedistrict for such payments?
Again, the question of whether staff members "have been illegally paid for unused vacation days" is ultimately factual in nature and should properly be addressed by a court. The question of whether district staff members will be entitled to retain amounts they have been paid for unused vacation days is likewise factual, implicating both legal principles and equitable principles such as reasonable reliance upon actual representations made, reasonable reliance upon past practice, a district representative's apparent authority to contract, lawful delegation of the power to contract, unjust enrichment, quantum meruit entitlement to payment for services rendered, [20] equitable estoppel, laches, etc. The availability of such *Page 16 
defenses to any claim made against district staff for disgorgement of amounts received will be intensely factual and lies beyond the scope of this office to address. Rather than setting forth in the abstract the elements of each of these legal theories, I will simply note that this question is properly addressed by counsel familiar with all of the attendant circumstances.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General DM/JHD:cyh
[1] See, e.g., Op. Att'y Gen. No. 2010-029 ("`How a district determines particular salary levels or increments or supplemental salaries is . . . left largely to the district.'"), quoting
Op. Att'y Gen. No. 2004-196, at n. 2. I further noted in Opinion2010-029 that a district's determination regarding payments that exceed the statutory minimum need not be calculated "using the [minimum] base salary as a starting point." Accord Ops. Att'y Gen. Nos. 2008-103 (opining that a district could rely upon a salary schedule based upon the value of "weighted factors" without utilizing the base salary of certified employees as a starting point) and 2004-196 (acknowledging the discretion of school districts to adopt "pay practices, including the amount of salary increments beyond the required minimums, as well as the method or formula for calculating the salaries of those who are paid under a supplemental salary schedule"). In Opinion No. 2010-029, I concluded that "`the law merely requires that by some means recorded in the salary schedule, and any supplement(s) thereto, certified employees are duly compensated,'" quoting Op. Att'y Gen. No. 2008-103.
[2] Turnbough v. Mammoth Springs School District No. 2,349 Ark. 341, 348-49, 78 S.W.3d 89 (2002). In Turnbough, the court remarked that the pertinent provision of the Arkansas Code, currently codified at A.C.A. § 6-17-1207 (Repl. 2007), allows, but does not obligate, a district to pay a teacher for unused sick leave. 349 Ark. at 348-49.
[3] Gazaway v. Greene County Equalization Bd.,314 Ark. 569, 575, 864 S.W.2d 233 (1993), citing Chem-Ash,Inc. v. Arkansas Power Light Co.,296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v. Hale,281 Ark. 390, 663 S.W.2d 930 (1946). This principle bears the Latinate designation expressio unius est exclusioalterius.
[4] See former Ark. Stat. Ann. § 80-1253; Turnbough,supra,349 Ark. at 348-49 (discussing this change in the law).
[5] A.C.A. § 6-13-620 (Supp. 2011). Accord
A.C.A. §§ 6-13-620(5)(A) (Supp. 2011) and 6-17-919 (Repl. 2007);Hart v. Bridges, 30 Ark. App. 262, 267, 786 S.W.2d 589 (1990). The statutory sections (Supp. 2011) referenced in A.C.A. § 6-13-620(5)(B)(2) deal respectively with incorporation of personnel policies into the contracts of certified personnel and the organization and duties of a personnel committee. As noted in Junction City School District v. Alphin,313 Ark. 456, 462, 855 S.W.2d 316 (1993), the category of "certified personnel" comprises "teachers and administrators."
In Hart, the court held that the appellant, who claimed to have been offered a teaching job by a school principal, did not have an enforceable contract claim given the absence of a written contract. 30 Ark. App. at 267. The court further held, however, that the appellant had a cognizable claim against the principal for damages resulting from the principal's allegedly acting in excess of his authority. Id. at 271. See response to question five,infra.
[6] I reference the personnel policymaking authority of the superintendent because the scope of a district superintendent's authority to dictate policy with respect to vacation policy is implicated in questions four and five below.
[7] The term "personnel policies" is defined at A.C.A. § 6-17-201(b) (Supp. 2011) as meaning "all school district policies, guidelines, regulations, and procedures that pertain to the terms and conditions of a teacher's employment." Subsection (c) of this statute includes "benefits," "compensation" and "leave" within the classification of "personnel policies." Subsection (d)(1) conditions the state's granting of additional state foundation funding from the Public School Fund upon the district's electronically filing the district's current personnel policies, including the salary schedule, with the Department of Education. This subsection further mandates that the district maintain a written copy of these policies. See Stone v.Mayflower School District, 319 Ark. 771, 774, 894 S.W.2d 881,849 S.W.2d 881 (1995). Section 6-17-2301 of the Code (Supp. 2011) echoes this writing requirement with respect to classified employees, who are subject to annual employment without being required to hold a teacher's license, providing that a district must file with the Department of Education a set of written personnel policies, including a salary schedule, no later than September 15 of each year. Subsection (c) of this statute provides that "[p]ersonnel policies of concern to the classified personnel policies committee will include "salary schedule, fringe benefits, and other compensation issues," as well as "[l]eave." Subsection (e) provides that the Department of Education will notify any district of its failure to comply with the filing requirement.
Specifically with respect to the required salary schedule, the court noted as follows in Stone:
 Our law is clear that school districts must adopt a minimum salary schedule with annual increments for education and experience and that they must abide by that schedule. Marvel [v. Coal Hill Public School District], 276 Ark. 369, [369,] 635 S.W.2d 245 [(1982)]; section 6-17-1001. As an assurance that districts would actually pay teachers according to the schedule, our legislature has required that the salary schedule must reflect the actual pay practices of the district in order for the district to receive state aid. Section 6-20-319(4)(B) [currently codified at A.C.A. §§ 6-20-2305(f)(4)(A) (Supp. 2011), 6-20-2206(c)(4) and 6-17-201(d)(1) (Repl. 2007)]. However, our law is equally clear that the personnel policies of a school district are incorporated into a teacher's contract unless changed by mutual consent. Section 6-17-204; Helena-West Helena Sch. Dist. #2 v. Randall, 32 Ark. App. 50, 796 S.W.2d 586 (1990).
319 Ark. at 774. The Code further indicates that a district's state educational funding might be compromised if a school district fails to provide the state on an annual basis "a salary schedule for its certified employees which recognizes a minimum level of training and experience. This schedule shall reflect the actual pay practices of the school district, . . . including all fringe benefits and supplemental salary schedules." A.C.A. § 6-20-2206(c)(4).
[8] A.C.A. § 6-17-295 (Supp. 2011).
[9] A.C.A. § 6-13-620(5)(A)(ii)(b)(2) (providing for such incorporation into the employment contracts of all district employees); see also A.C.A. § 6-17-204(a) (Supp. 2011) (providing that "[t]he personnel policies of all school districts shall be considered to be incorporated as terms of the certified personnel contracts and shall be binding upon the certified personnel and the school district").
[10] A.C.A. § 6-13-620(5)(B); see also
A.C.A. § 6-17-1506 (Repl. 2007) (providing that contracts between a board of directors and teachers will be renewed in writing annually on the same terms unless those terms are altered by law or by mutual consent).
[11] For a discussion of the principle that there must be a "meeting of the minds" between or among contracting parties, seeFoundation Telecommunications v. Moe Studio,341 Ark. 231, 242, 16 S.W.3d 531 (2000).
[12] Indeed, with respect to the filing of a salary schedule, my inquiries have not revealed a single instance in which a district has been sanctioned for failure to specify in a salary schedule its policy regarding the redemption of unused vacation time upon retirement or leaving district employment.
[13] A.C.A. § 6-20-2206(c)(4); accord
A.C.A. § 6-20-2305(f)(4)(B).
[14] I have found no authority on this issue.
[15] As the district's chief executive officer, A.C.A. § 6-13-109(b) (Repl. 2007), a district superintendent is charged only with the authority to implement board policy, not to pronounce it.
[16] The pertinent statute, A.C.A. § 21-9-301 (Supp. 2011), provides in pertinent part:
 (a) It is declared to be the public policy of the State of Arkansas that all . . . school districts . . . and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.
 (b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.
In Cousins v. Dennis, 298 Ark. 310, 767 S.W.2d 296 (1989), the court interpreted Ark. Code Ann. 21-9-301 to also provide tort immunity to school employees for their liability for negligent acts arising out of the performance of their official duties. See alsoWaire v. Joseph, 308 Ark. 528, 534, 825 S.W.2d 594 (1992);Matthews v. Martin, 280 Ark. 345, 658 S.W.2d 374 (1983). However, the immunity from civil liability for negligence does not extend to intentional acts. City of Fayetteville v. Romine,373 Ark. 318, 284 S.W.3d 10 (2008).
[17] Hart, supra at n. 1, 30 Ark. App. at 268-72 (reversing summary judgment in favor of a high-school principal who had sought to avoid liability by arguing that he lacked statutory authority to promise an applicant a job).
[18] Id. at 271, quoting Arkansas National Bank v. SchoolDistrict No. 99, 152 Ark. 507, 511, 238 S.W. 630 (1922).
[19] It is unclear to what extent such equitable principles as estoppel, laches, quasi-contract, quantum meruit or reasonable reliance on apparent authority might apply to the board and its members, given the overarching principle that district employment contracts must be in writing. On this issue, see the discussion in Hart, supra at n. 5.
[20] The concept that one may be entitled to recover in equity for the quantum meruit value of services rendered has long been recognized. See, e.g., Gladson v. Wilson,196 Ark. 996, 120 S.W.2d 732 (1938) (generally discussing the theory of quantum meruit as entitling one to the value of services provided). *Page 1