Carolyn STONE *v.* MAYFLOWER SCHOOL DISTRICT

94-655                                         894 S.W.2d 881

Supreme Court of Arkansas
Opinion delivered March 13, 1995

*Mitchell, Blackstock & Barnes*, by: *Clayton R. Blackstock*, for appellant.

*Brazil, Clawson, Adlong, Murphy & Osment*, by: *William Clay Brazil*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Carolyn Stone, appeals an order of the Faulkner County Circuit Court, entered by the court sitting without a jury, dismissing her complaint

against appellee, Mayflower School District. This appeal. arises from a contract dispute over salary between appellant, a teacher and counselor, and appellee, and was certified to this court because it requires interpretation of The Teachers' Minimum Salary Law, Ark. Code Ann. § 6-17-1001 to -1003 (Repl. 1993), and The School Finance Act of 1984, Ark. Code Ann. §§ 6-20-301 to -321 (Repl. 1993). Jurisdiction is therefore properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(3) and (d). Although appellant died before her appeal was submitted, both parties, in oral argument before this court, stipulated that the record should reflect that an order of revivor has been entered. We find no error and affirm.

The thrust of appellant's argument in this case is that, in violation of The Teachers' Minimum Salary Law and The School Finance Act of 1984, she was not paid in accordance with appellee's salary schedule. Appellant contends she was not given full credit for her previous experience as a teacher. She filed suit against appellee seeking judgment for the difference between her salary and the salary appellant argued she should have been paid had she been classified correctly in the salary schedule.

The evidence revealed that appellant signed annual employment contracts with appellee from the 1987-88 school year through the 1992-93 school year. Appellee does not dispute that appellant's 1987-88 contract reflected an experience level of five years. After the 1987-88 contract, appellant's ensuing contracts each reflected an additional year's experience so that with the final contract between the parties in 1992-93 reflected she had ten years experience.

Appellant testified that at the time she signed the 1987-88 contract she was certified in art, physical education, industrial arts, and counseling grades kindergarten through twelve; she had seventeen years teaching experience. The 1987-88 contract stated her primary responsibility was elementary school counselor. Appellant testified that she had worked as a counselor for only two of the seventeen years she had taught. She stated further that it was not until she served on the committee to review the policy handbook, after she signed the 1987-88 contract, that she discovered she was not being paid in accordance with appellee's salary schedule. However, appellant admitted on cross-examina-

tion, that she accepted the 1987-88 contract "willingly and happily" and that she signed every contract thereafter knowing what the policy handbook stated regarding the salary schedule.

Appellant frames the issue of this case as whether a school district can pay a teacher a salary different from the one specified for that teacher on the district's salary schedule. Appellant contends the answer is no, and cites *Marvel* v. *Coal Hill Public Sch. Dist.*, 276 Ark. 369, 635 S.W.2d 245 (1982), in support. In *Marvel*, this court held that a school district could not avoid abiding by its own salary schedules simply because a federal grants program provided for a lower salary. Because the facts of *Marvel* and the present case are so dissimilar, *Marvel* is not controlling of the present case. Appellee responds that, according to statute and its own personnel policies filed with the State Board of Education, it could pay a teacher less than required by its salary schedule so long as the Board had "good reason" for doing so and stated such reason in the official minutes of the Board's meetings.

The trial court found that the parties entered into a contract whereby appellant's starting salary was based on five years experience as applied to the salary schedule then in existence and that appellant had been paid the required increments based on the original agreement between the parties. The trial court therefore dismissed her complaint. We cannot say the trial court's findings were clearly erroneous and therefore affirm the judgment. *Murray* v. *Altheimer-Sherrill Public Sch.*, 294 Ark. 403, 743 S.W.2d 789 (1988).

Section 6-17-201(a) of the Arkansas Code of 1987 Annotated, 1993 replacement volume, provides that "[e]ach school district in the state shall have a set of written personnel policies, including the teacher salary schedule." The Code further provides that the personnel policies in effect at the time a teacher's contract is entered into or renewed shall be considered to be incorporated as terms of the contract and shall be binding upon both parties unless changed by mutual consent. Ark. Code Ann. § 6-17-204(a) (Repl. 1993). At the time appellant signed her 1987-88 contract, the personnel policies then in effect provided in pertinent part:

Section 3.2

A. Employees' salaries shall correspond to an adopted salary schedule which takes into account the level of preparation and the years of teaching experience, *unless the Board, for good reason, decide to exclude a teacher or administrator from schedule and include such statement in its official minutes.* [Emphasis added].

The official minutes of the August 3, 1987 Board meeting reflect that appellant's "placement on the salary schedule at experience step #5 [was] due to lack of experience in Specialty Field and mutual agreement."

■ Our law is clear that school districts must adopt a minimum salary schedule with annual increments for education and experience and that they must abide by that schedule. *Marvel*, 276 Ark. 369, 635 S.W.2d 245; section 6-17-1001. As an assurance that districts would actually pay teachers according to the schedule, our legislature has required that the salary schedule must reflect the actual pay practices of the district in order for the district to receive state aid. Section 6-20-319(4)(B). However, our law is equally clear that the personnel polices of a school district are incorporated into a teacher's contract unless changed by mutual consent. Section 6-17-204; *Helena-West Helena Sch. Dist. #2 v. Randall*, 32 Ark. App. 50, 796 S.W.2d 586 (1990). Appellee's personnel policies provided that a teacher could be excluded from the salary schedule for good reason. Appellee's "good reason" for giving appellant only five years experience for the counselor's position was because only two of her seventeen years of experience were in the counseling field. The trial court found appellant and appellee reached an agreement. Based on this record, we cannot say the trial court erred.

The judgment is affirmed.

GLAZE and ROAF, JJ., dissent.

ANDREE L. ROAF, Justice, dissenting. Today's decision compromises the requirement that a school district abide by its published salary schedule. The majority correctly states that "[o]ur law is clear that school districts must adopt a minimum salary schedule with annual increments for education and experience

and that they must abide by that schedule." *Marvel* v. *Coal Hill Public Sch. Dist.*, 276 Ark. 369, 635 S.W.2d 245 (1982); Ark. Code Ann. § 6-17-1001 (Repl. 1993). The majority, however, concludes a school district is not required to abide by that salary schedule if the district's personnel policies provide that a teacher may be excluded from the schedule.

It is true that the personnel policies of a school district are incorporated into a teacher's contract unless changed by mutual consent. Ark. Code Ann. § 6-17-204 (Repl. 1993); *Helena-West Helena Sch. Dist. #2* v. *Randall*, 32 Ark. App. 50, 796 S.W.2d 586 (1990). The phrase relevant to the discussion of the instant case is "unless changed by mutual consent" but *Marvel* and *West Helena* are not at all helpful in determining the meaning of this language, since neither case addressed the validity of changes in personnel policies. Did the General Assembly intend to authorize school districts to evade adopted salary schedules and personnel policies by negotiating with individual teachers? Such authority would seem to defeat the purpose of requiring school districts to abide by salary schedules and policies which have been promulgated in compliance with other related statutes.

In reaching its decision, the majority notes that "[e]ach school district in the state shall have a set of written personnel policies, including the teacher salary schedule." Ark. Code Ann. 6-17-201(a) (Repl. 1993). The legislation which added the "including the teacher salary schedule" provision did not take effect until after the date of Mrs. Stone's initial 1987-88 contract. However, the fact that teacher salary schedules were not mandated by law to be a part of the written personnel policies is not the only or the most serious problem with the decision of the majority. To conduct a proper analysis of the issue presented in this case, § 6-17-204 must be examined as part of the total scheme of interrelated statutes which pertain to school personnel policies in general and which have undergone numerous amendments.

Sections 6-17-201 through 205 are found in the subchapter entitled "Personnel Policies." On the date of appellant's initial contract, section 201(a) provided: "Each school district in the state *shall have* a set of *written personnel policies* legally adopted by its board of directors." Section 202 stated:

(a) Each school district *shall have* a *committee on per-*

*sonnel policies consisting of classroom teachers*, administrators, and the superintendent.

> (b) The *classroom teacher members* of each district's committee *shall be elected* by the classroom teachers employed in the district.

(Emphasis supplied.) Finally, section 203 stated:

> (a) Each school district's *committee on personnel policies* shall review the district's personnel policies annually to determine if *additional policies or amendments to existing policies are needed.*

> (b) *Either the committee or the board of directors may propose new personnel policies or amendments to existing policies.*

> (c) The *board of directors shall have authority to adopt, reject, amend or refer back to the committee on personnel policies* for further study and revision any proposed policies or amendments to existing policies that are submitted to the board for consideration.

(Emphasis supplied.)

Act 224 of 1983, which is codified as § 6-17-204, was entitled "An Act to Make School District's Personnel Policies a Part of A Teacher's Contract; and for Other Purposes." It is important to look at this act in its entirety, including the emergency clause:

> Section 1. The *personnel policies* of each school district in effect *at the time* a teacher's contract is entered into or renewed shall be considered to be incorporated as terms of said contract and shall be binding upon *both parties* unless *changed by mutual consent.*

> Section 2. Any *amendments to personnel policies* adopted during the term of such contract shall become effective the following July 1. *Provided, such amendments may take place immediately with mutual consent.*

> Section 3. All other laws and parts of laws in conflict with this act are hereby repealed.

> Section 4. It is hereby found and determined by the

General Assembly that some *school districts change their personnel policies* pertaining to teachers *after contracting* with the teachers; that such practice is unconscionable, and that this Act is necessary to *cure such inequity*. Therefore, an emergency is hereby declared to exist . . .

(Emphasis supplied.)

It is more logical to read section 204 as applicable only to changes in policies which are adopted after contracting with a teacher. It is also helpful to examine Act 687 of 1987, which added the teacher salary schedule to the required written personnel policy. Although this act was not in effect on the date appellant initially contracted with appellee, the provisions of the statute suggest that the purpose for placing the salary schedule in the personnel policy was to also bring these schedules under the purview of the personnel policies committees which contain elected classroom teacher representatives. The act reads:

> Section 1. Each school district in the State shall have a set of written personnel policies, *including the teacher salary schedule.*

> Section 2. Each school district shall have a *committee* on Personnel Policies *which shall consist of no fewer than five (5) classroom teachers, and no more than three (3) administrators.*

> Section 3. . . . *Either the committee or the board of directors* may propose *new personnel polices* or *amendments to existing policies*, provided that such *proposals by the Board have been submitted to the committee* at least five working days prior to presentation to the Board. . . .

(Emphasis supplied.) Act 687 not only brought the teacher salary schedules into the personnel policy, but also significantly increased the role of classroom teachers on the policy committees.

Ultimately, in construing section 204, we must look to all of the related statutes in determining the meaning of the words "unless changed by mutual consent." If the related statutes *mandate a personnel policy committee* and *mandate such committee's* involvement and participation in the promulgation of and change to the personnel policies, then it makes little sense that

school districts would be given the authority to circumvent the role of the personnel policy committees by negotiating deviations from such policies with individual classroom teachers. Since the emergency clause of Act 224 stated that the act was necessitated by *school districts which were changing their personnel policies* pertaining to teachers *after contracting* with the teachers, it is more logical to construe this act as pertaining to teachers as a group and not as individuals.

Thus, under section 204(a), the personnel policies shall be binding upon both "parties" (the school district and the teachers) unless "changed by mutual consent" (changed by the procedure outlined in section 203) *after* the commencement of the contract year. Similarly, section 204(b) provides that amendments to the policies may take place immediately with *mutual consent.* (Consent of the duly constituted committee and the district, rather than of individual teachers on a case by case basis).

Finally, our legislature has declared that the salary schedule must reflect the actual pay practices of the district in order for the district to receive state aid. Ark. Code Ann. § 6-20-319(4)(B) (Repl. 1993). Appellee could easily have complied with this requirement by promulgating a salary schedule or personnel policy which clearly set out the procedure for determining the salary of teachers new to the district with prior teaching experience. Instead, they relied on a provision in their personnel policy which gave the appellee the authority to exclude a teacher from the published salary schedule for "good reason" and allowed the superintendent to in effect determine the salary of appellant and numerous others similarly situated on a case by case basis. Almost inevitably, this resulted in disparate treatment. Appellant should have been able to verify the correctness of the salary offered to her by review of the appellee's published policies and salary schedule, and should not have had to rely solely on verbal representations made to her in a closed door interview with the superintendent. It seems that this is exactly the situation and exactly the sort of conduct by school districts that the statutory scheme seeks to prevent. The majority would deny this statutory protection to an entire category of classroom teachers and open the door to similar practices by other school districts. The appellee's authorized salary schedule did not accurately reflect its actual pay practices.

For the foregoing reasons, I respectfully dissent.

GLAZE, J., joins.