The Honorable Charlotte Schexnayder State Representative Post Office Box 220 Dumas, Arkansas 71639-0220
Dear Representative Schexnayder:
This is in response to your request for an opinion on the use of amounts in a school district's teachers' salary fund. As noted in your request, a statute restricts the use of such amounts, as follows:
 Only warrants or checks in payment of salaries of teachers, as defined in § 6-17-902, in payment of dues of teachers to professional organizations, in payment of teachers' contributions to the Teacher Retirement System, and in payment of insurance or other fringe benefits for teachers shall be paid from the teachers' salary fund. However, insurance or other fringe benefits must be approved by a majority of the teachers in the school district voting in a secret election.
A.C.A. § 6-17-908(a) (Repl. 1993).
Act 1096 of 1995, codified at A.C.A. §§ 24-7-1301 to -1312 (Supp. 1995), created the teacher deferred retirement option plan ("TDROP"). When a teacher elects to participate in TDROP, the school district employing the teacher is relieved of its obligation to make employer contributions to the Arkansas Teacher Retirement System (the "ATRS") on behalf of the teacher. A.C.A. § 24-7-1303. You inquire whether a school district lawfully may make payments toward a private annuity contract to benefit a teacher participating in TDROP with amounts in the teachers' salary fund,[1] such payments to be made only during the period of the teacher's employment and to be equal in amount to the employer contributions to the ATRS the district would have paid on behalf of the teacher if he or she did not participate in TDROP.
In my opinion, the answer to your question likely is "yes," assuming the district complies with the election requirement of A.C.A. § 6-17-908(a), the district's authority to make such payments is not preempted by state laws providing for teacher retirement (see infra at pp. 4-5), and the payments are in compliance with the district's valid teacher salary schedule (see infra at pp. 5-6).
Arkansas Code Annotated § 6-17-908(a) permits districts to pay for "insurance or other fringe benefits" from the teachers' salary fund following a vote of the district's teachers approving the payments. Even if the annuity contract at issue is not deemed to be insurance for purposes of the statute,[2] such an instrument, in my opinion, likely would be held to be a fringe benefit. The term "fringe benefit" is not defined by statute for purposes of the Arkansas Teachers' Salary Law, of which A.C.A. § 6-17-908(a) is a part. It is defined by two sources, however, as follows:
 Benefits received by any employee in addition to wages or salary, such as group insurance, pension rights, etc.
BALLENTINE'S LAW DICTIONARY 503 (5th ed. 1979).
[P]erquisites or benefits supplementing money wage or salary.
THE CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH 424 (J. Sykes ed. 1976).
Cases from other jurisdictions appear to be generally to the effect that payments made during the term of employment for arrangements that will benefit an employee during his or her retirement are fringe benefits within the meaning of that term as used in various statutes. See, e.g.,NL Industries, Inc. v. Dill, 769 P.2d 920 (Wyo. 1989); Hobbs v. Lewis,159 F.Supp. 282 (D.D.C. 1958). While no reported Arkansas decision has addressed the question at hand, language employed in several cases is generally consistent with the proposition that payments during employment toward a retirement scheme are fringe benefits. See, e.g., Hall v.Staha, 314 Ark. 71, 858 S.W.2d 672 (1993); Mears, County Judge v. Hall,263 Ark. 827, 569 S.W.2d 91 (1978); Tabor v. Levi Strauss Co.,33 Ark. App. 71, 801 S.W.2d 311 (1990).
In addition, the term "fringe benefits" is defined in A.C.A. § 6-20-1302 (Repl. 1992), which requires each school district annually to report to the Department of Education the amount of its expenditures for administrative costs. Expenditures for fringe benefits for administrative personnel are part of a district's administrative costs. The term "fringe benefits" is defined to include:
 All social security taxes, teacher retirement contributions, all insurance premium payments, all contributions or premiums for any other retirement benefit, annuity, or deferred compensation. . . .
A.C.A. § 6-20-1302(b)(2).
Clearly, an annuity to benefit an administrator constitutes a fringe benefit, and payments for the annuity are administrative costs that must be reported under A.C.A. § 6-20-1302.[3]
In view of the plain meaning of the term and the fact that a related statute expressly defines the term to include payments for annuities, it is my opinion that a district's payments during the period of a teacher's employment on an annuity contract for the benefit of that teacher likely would be held to be for a "fringe benefit," as that term is commonly used and understood and as used in A.C.A. § 6-17-908(a). It follows that such payments may be made from the teachers' salary fund if the election requirement is satisfied and the district can conclude that the payments are not prohibited as discussed below.
I am mindful of Op. Att'y Gen. 92-086 (copy attached). There, I concluded that a school district is not authorized to reimburse teachers taking early retirement for certain insurance expenditures. In that context, a statute expressly provides that retired teachers who wish to continue coverage under district insurance plans must pay the premiums. See
A.C.A. § 6-17-1112 (Repl. 1993). It was, and is, my view that the statute must be read to prohibit school district reimbursement of such amounts because the payments would amount to a local alteration of the comprehensive, state-mandated, teacher retirement scheme. I concluded that teacher retirement is an area in which state regulation is so pervasive that there is no room for supplemental legislation, and therefore that local rules and policies on the same subject are preempted, particularly where those local rules have a decided impact upon the decision to retire at a particular time and could overburden the ATRS with early retirees. If the reasoning of that opinion is applicable to the payments proposed here, they may not be made by a school district at all, from the teachers' salary fund or any other source.
A definitive opinion about whether an arrangement such as the one contemplated here would be deemed to be preempted by state laws providing for teacher retirement is not possible in the absence of additional authority. The payments proposed here are, however, in my view distinguishable from those addressed in Op. Att'y Gen. 92-086. The payments addressed in Op. Att'y Gen. 92-086 were to be paid after retirement had occurred, and only to early retirees until they reached the age of 65. Those payments thus clearly affected the decision whether to take early retirement by directly making it more economically beneficial to do so.
By contrast, the payments at issue here are to be made only during the period of a teacher's employment. They appear, therefore, to be compensation or fringe benefits, rather than retirement benefits; payments in consideration of employment, rather than pension payments. The fact that the payments are intended ultimately to benefit the teacher after retirement may not be controlling in view of the fact that every payment made by a school district to or on behalf of a teacher may affect, to some degree, the teacher's decision of when to retire.
School boards have broad discretion to determine how public education in the district will be conducted and how school funds will be spent. See
A.C.A. § 6-13-620(9) (Supp. 1995) (school boards may issue warrants "for the payment of salaries due teachers and other employees, and for any other lawful purposes") and A.C.A. § 6-13-620(13) (school boards may "[d]o all other things necessary and lawful for the conduct of efficient free public schools in the district"). This discretion, and the facts and circumstances distinguishing the contemplated payments from those addressed in Op. Att'y Gen. 92-086, may indicate that the payments would not be preempted by state law and therefore would not be subject to challenge as an illegal exaction. See Ark. Const. art. 16, § 13.
I am also mindful of several prior opinions of this office addressing salary schedules (copies attached). In Op. Att'y Gen. 90-128, I concluded that salary schedules must provide for equal salaries to teachers of equal education and experience. In Op. Att'y Gen. 91-054, I concluded that applicable law, particularly A.C.A. § 6-20-319(4)(B) (Supp. 1995), requires each school district to maintain one, and only one, salary schedule for certified personnel. That statute expressly requires that the salary schedule include "all fringe benefits." In Op. Att'y Gen.92-213, I implicitly agreed with the requester that a salary schedule may be "weighted" so that a teacher who bears added responsibilities (such as being a principal or band director) will be paid more than a teacher of equal education and experience who does not bear any such added responsibilities.
If the payments contemplated here will be for "fringe benefits," as I have concluded they likely will, then they must be included on the teacher salary schedule. A.C.A. § 6-20-319(4)(B). It is my understanding, however, that employer contributions to the ATRS[4] do not now generally appear on districts' salary schedules. If my understanding is correct, it appears that the making of the annuity payments contemplated here would require the district in effect to use two salary schedules, because payments required to be shown on the salary schedule to or for the benefit of teachers participating in TDROP would exceed amounts shown on the existing salary schedule payable to or for the benefit of a teacher of equal education, experience, and responsibility not so participating. I express no opinion with respect to whether a district could "weight" its salary schedule on the basis of whether a teacher participates in TDROP, because it appears that the concern discussed herein could be remedied by including employer contributions to the ATRS on the salary schedule.[5], [6]
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] It is not entirely clear why or whether such payments should be made from the teachers' salary fund. It is clear that employer
contributions to the ATRS may not be made from that fund. A.C.A. §6-17-908(a). You have not inquired, and so I render no opinion, with respect to whether teachers' salary funds will continue to be of significance after the Equitable School Finance System Act of 1995, Act 917 of 1995, becomes generally effective. I know of nothing that would prohibit a district's making the payments from its operating fund, provided the arrangement is not prohibited because preempted by state law provisions on teacher retirement (see infra at pp. 4-5) and does not cause the district's compensation policies to be violative of laws providing for the teacher salary schedule (see infra at pp. 5-6), in either of which event the payments may not be made from any school funds.
[2] But see generally Nationsbank of North Carolina, N.A. v. VariableAnnuity Life Ins. Co., ___ U.S. ___, 115 S.Ct. 1003, 130 L.Ed.2d 964
(1995).
[3] That statute appears to have a different purpose from that of A.C.A. § 6-17-908(a). The reporting statute presumably is designed to enable the Department of Education to monitor the incurrence of administrative costs by local school districts. The statute does not purport to authorize school districts to make any expenditures; it merely requires them to report certain expenditures made. In furtherance of the statute's purpose, it seems likely that A.C.A. § 6-20-1302 would be interpreted to require the reporting of actual expenditures on benefits that a school district is not necessarily legally authorized to incur. The fact of the expenditure, not whether it was authorized, appears to be of primary importance under A.C.A. § 6-20-1302. The statute relating to the teachers' salary fund, on the other hand, affirmatively restricts the purposes for which amounts in that fund may be expended. It would be reasonable, then, to expect a court to hold that a fringe benefit that is required to be reported under A.C.A. § 6-20-1302 is not necessarily a fringe benefit for which amounts in the teachers' salary fund may be expended under A.C.A. § 6-17-908(a). Notwithstanding the foregoing, however, it is my view that payments on an annuity contract for an employee are so clearly for a fringe benefit that no such distinction would be made here.
[4] These contributions are currently paid by the Department of Education on behalf of school districts. See Act 1194 of 1995, § 1, item 01. Beginning with the 1996-97 school year, these contributions will be paid directly by local school districts. See Act 1194 of 1995, § 13. The method of payment of employer contributions to the ATRS is not, in my view, relevant to the question of whether a district whose salary schedule does not reflect such payments may lawfully make the annuity payments here at issue.
[5] I am aware of Stone v. Mayflower School Dist., 319 Ark. 771,894 S.W.2d 881 (1995), in which the court held that a district and a teacher may enter into an enforceable agreement that the teacher will be paid less than the amount, shown on the salary schedule, to which the teacher would be entitled in the absence of the agreement, where the district's personnel policies expressly provide that such an agreement may be entered into for "good reason." In my view, the distinctive facts of the Stone
case limit its precedential value, and there appears to be no reason to believe the facts of a dispute arising from a pay differential such as the one assumed herein would be so similar that the holding of Stone
would control.
[6] You have not inquired, and nothing herein should be interpreted as constituting an opinion, with respect to whether employer contributions to the ATRS, whether or not shown on the salary schedule, or the annuity payments contemplated herein, may be counted toward satisfying the minimum teacher pay requirement of A.C.A. § 6-20-307(f) (Supp. 1995; repealed effective July 1, 1996) or that of A.C.A. § 6-20-310(1) (Supp. 1995; as enacted by Act 917 of 1995).