The Honorable Jim Milum State Representative 607 Skyline Drive Harrison, Arkansas 72601-2309
Dear Representative Milum:
This is in response to your request, on behalf of a constituent, for an opinion on three questions concerning the pay of a teacher in the Harrison School District. Specifically, documents enclosed with your request indicate that a particular certified employee in the District (the girls' basketball coach), agreed in years 1985-86; 1986-87 and 1987-88 to a salary lower than that to which she would be entitled to under the District's salary schedule in order to "avoid inequities with the boys basketball coach." Minutes of Harrison School Board, (6-18-85). The Division of Legislative Audit noted this deviation from the salary schedule in both its 1986 and 1987 audits of the District. The certified employee in question now seeks back pay for the amounts owed to her for the school years 1985-86, 1986-87 and 1987-88. The three questions posed in this regard are as follows:
 1. Is it legal to use current school district funds to restore a teacher's salary which was reduced during the school years of 1985-86, 1986-87 and 1987-88?
 2. Was the school district in violation of state law when it deferred part of the teaching experience to bring the salary of the girls' basketball coach to the equivalent of the boys' basketball coach?
 3. When the audit report in 1988 recommended that the district pay according to the teacher's salary schedule, did that require the school board to correct past salaries which were not paid according to the salary schedule?
I must note as an initial matter that the Attorney General's office, in issuing formal Attorney General opinions, concerns itself with matters of state law, and is not in a position to resolve individual teacher pay disputes. The problem described is a matter for the District's legal counsel, and the counsel for the affected teacher. I can, however, address some state statutes that have bearing upon your questions, and refer you to some previously issued opinions on the relevant law.
In response to your first question, the most relevant barrier to the use of current district funds to pay a teacher for past years is A.C.A. § 6-20-402(b)(6). It provides as follows:
 It shall be the duty of the school fiscal officer to indicate on each school district warrant or on the schedule of payments attached to a written installment contract or lease purchase agreement the school year's revenues against which the obligation was incurred and is to be paid, and it shall be unlawful for the school fiscal officer to issue a school district warrant or enter into an installment contract or lease purchase agreement, the installments for which are to be charged against the revenues of a school year, if the obligation thereof was incurred in a different school year, except as authorized herein.
"The impact of the relevant language above is that a school district cannot enter into an obligation in one school year chargeable against the revenues of a different school year, other than as authorized in §6-20-402." Op. Att'y Gen. 96-066. In my opinion therefore, using current year revenues to satisfy an obligation from years 1985-86, 1986-87 and 1987-88, absent some controlling court order or other appropriate authority, might well run afoul of A.C.A. § 6-20-402 and result in another audit notation from the Division of Legislative Audit.
In response to your second question, concerning whether the agreement to be paid less than the amount set in the salary schedule was contrary to law, I must note that a resolution of this question would require reference to all the pertinent facts. The law existing during the relevant three-year period provided that: "The personnel policies of each school district in effect at the time a teacher's contract is entered into or renewed shall be considered to be incorporated as terms of the contract and shall be binding upon both parties unless changed by mutualconsent." See former A.C.A. § 6-17-204(a) (1987) (emphasis added). Seealso Stone v. Mayflower School District, 319 Ark. 771, 894 S.W.2d 881
(1995) (a school district may pay a teacher a salary different from the one specified for that teacher on the salary schedule when, according to statute and its own personnel policies filed with the State Board of Education, it could pay a teacher less than required so long as the Board had "good reason" for doing so and stated such reason in the official minutes of the Board's meeting). Section 6-17-204 was amended in 1995, however, to, among other things, remove the emphasized language "unless changed by mutual consent," and to add a provision stating: "No certified person may waive payment according to the salary schedule." See current A.C.A. § 6-17-204(c)(4) (Supp. 1997). Because the facts you describe occurred under prior law, I cannot determine whether this particular salary reduction agreement was contrary to law without detailed reference to all the policies, contracts, and agreements of the district and the affected party. This is a matter for the school district's counsel, the certified employee's counsel, or ultimately for a court presented with the question.
In response to your third question, concerning whether the audit report requires the school board to correct past salaries, in my opinion the audit report, standing alone, does not have such impact. It is merely an "audit," which is defined as "a methodical examination and review."Webster's Seventh New Collegiate Dictionary, page 58. Such audits typically culminate in a formal report. See id. (also defining the term "audit" as meaning "the final report of an examination of books of account by auditors"). Section 10-4-209(d)(3) of the Arkansas Code, relating to school district audits, provides that "the board or governing body shall take appropriate action relating to each finding and recommendation contained in the audit report." Each of the relevant audits recommends only that the district "pay according to the teachers' salary schedule." This recommendation does not specifically address retroactive payments. In my opinion, therefore, the audit report, in and of itself, does not have the effect of compelling any retroactive payments.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh